## Paducah & Illinois Ferry Company v. Robertson.

(Decided December 9, 1914.)

### Appeal from McCracken Circuit Court.

1. Conversion—Unlawful Conversion of Personal Property—Owner's Remedies.—Where one illegally obtains the possession of personal property by purchase at a void sale and converts it to his own use, the owner may bring an action to set the sale aside, or to recover the specific property; or he may sue for the value of the property because of its illegal conversion.

2. Corporations—Sale of Corporate Property—Power of Board Directors.—Action of the board of directors of an incorporated ferry company in ordering a sale of all the corporate property, though approved by the stockholders, did not, in the absence of a resolution to that effect, operate as a dissolution of the corporation; as it might have obtained another franchise and other property in lieu of what had been sold, and continued its business.

3. Corporations.—When Board of Directors May Act Without Approval of the Stockholders.—Although the board of directors, with the approval of the stockholders of the corporation, may have ordered the sale of the corporate property at a time and place fixed by resolution, if the board of directors, acting upon information received before the sale, became convinced that to make it at the time fixed would result in the sacrifice of the property and great loss to the stockholders, it had the right, a majority of the board acting, to postpone the sale, without awaiting action upon the part of the stockholders.

4. Corporations—Action by Board of Directors—Called Meeting—When Participation of Majority of Board's Members Sufficient.—The rule that all directors are entitled to notice of special meetings, and that acts done or business transacted without such notice is invalid, like most other rules, is subject to some exceptions. Emergencies may arise which will excuse the giving of notice to all the directors of a special meeting, the emergency demanding immediate attention to save the corporate property and to save expense. Another exception to the rule is that notice may be dispensed with where all the directors are present and participate in the proceedings. The only object of notice is that the directors have an opportunity of being present at the meeting and taking part in the proceedings. Where, in a case of emergency,

a special meeting is held without notice, but at which all the directors are present, if one of them, upon learning the object of the meeting, leaves to keep from participating therein, such action as may be concurred in by the members constituting a majority of the board, remaining at the meeting and participating therein, will be as legal and binding for all purposes as if all the directors constituting the board of directors had been notified of the time and place of the meeting and had attended same.

J. D. MOCQUOT for appellant.

CAMPBELL & CAMPBELL for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

This action was instituted in the court below by the appellant, Paducah & Illinois Ferry Company, a corporation, to recover of the appellee, Charles L. Robertson, the value of a steamboat, known as the G. W. Robertson, ferry franchise, landings, docks and wharves at the city of Paducah, of which it claimed to be the owner, upon the ground, as alleged, that appellee had unlawfully converted the same to his own use; it being further alleged in the petition that the steamboat was of the value of $10,000.00 and the landings, docks, wharves and franchise of the value of $5,000.00, for which sums, aggregating $15,000.00, judgment was prayed. The appellee's answer contains two paragraphs. In the first it is denied that he unlawfully or with intent to deprive appellant of the ownership of the property referred to, took possession of or converted same to his own use; denied that he had ever converted or had possession of the landings, docks, wharves or franchise, and also denied that the steamboat was worth $10,000.00, or any amount exceeding $2,500.00, or that the franchise, docks, wharves and landings were of the value of $5,000.00.

In the second paragraph of the answer it was alleged that, at a meeting of the board of directors of the appellant corporation, held on January 6, 1914, a resolution was adopted ordering that appellant's steamboat, ferry franchise, landings, docks and wharves be offered for sale at public auction on February 10, 1914, at ten o'clock a. m., at the Paducah boat-landing, to the highest and best bidder, for one-third cash and the balance in equal installments, payable in three, six, nine and twelve months after the date of sale, for which the

purchaser should be required to give notes with approved security, bearing six per cent interest from date until paid, with the privilege to him to pay all cash, if desired; that the resolution further provided that no person should be accepted as a bidder for the property until he had deposited with the auctioneer his certified check, payable to the corporation, for the sum of $1,000.00, which, if he should become the successful bidder and comply with the terms of sale, would be accepted as part of the purchase money. If, however, he became the successful bidder, but failed to comply with the terms of sale, the amount of the check, in that event, should be forfeited to the corporation as damages for such failure. That immediatey after the adoption of this resolution by the board of directors, its action in respect thereto was approved by the stockholders of the corporation at a meeting then held by them; that appellant advertised the sale of the whole of the property by insertion of advertisements in newspapers in the cities of Paducah, Memphis, Tennessee, St. Louis, Missouri, and other points; and that thereafter, at the time and place fixed by the resolution of the board of directors for the sale of the property, it was offered for sale by Cecil Reed, as auctioneer, in accordance with the terms of the resolution and advertisements of sale, and appellee, who had previously deposited with Reed the certified check for $1,000.00, being the highest and best bidder, became the purchaser of the whole of the property in question at his bid of $2,500.00, whereupon he paid Reed the entire $2,500.00 and received from him the steamboat, G. W. Robertson.

By its reply, appellant denied that Cecil Reed was authorized by its board of directors to sell the property in question, and alleged that prior to ten o'clock a. m., on February 10, 1914, and before the alleged sale of the property by Reed, appellant's board of directors held a meeting at its office in the city of Paducah, at which all of its members were present, and at such meeting adopted a resolution, by a majority vote of the members of the board, rescinding so much of the resolution adopted by it January 6, 1914, as provided for the sale of the property on February 10, 1914, and postponing the sale, notice of which resolution was communicated by the president of the board of directors to Reed, the auctioneer, at the place of sale and before it was made by him, which notice was accompanied by an order given

him by the president of the board of directors not to make the sale; but that, notwithstanding such notice and order, Reed illegally attempted to proceed with the sale and went through the form of offering the property and of accepting the alleged bid made by appellee therefor; that the sale thus attempted to be made was illegal ,and void, because of which appellee took no title to the property in question, or any part thereof, and that his act in taking possession of the property and continuing to hold it constituted an illegal conversion of same.

After the filing of appellee's rejoinder controverting the affirmative matter of the reply the case went to trial and resulted in a verdict in behalf of appellee, in obedience to an instruction given by the trial court, at the conclusion of all the evidence, peremptorily directing the jury to so find. Judgment was entered in accordance with the verdict. Appellant was refused a new trial, hence this appeal.

It is insisted for the appellant that the giving of the peremptory instruction directing a verdict for appellee was error entitling it to a reversal of the judgment appealed from. The reason for this ruling by the circuit court is not stated in the record, but it seems to be agreed by counsel that it was based upon the theory that the evidence failed to sustain the cause of action alleged in the petition. In order to determine whether this ruling was authorized, consideration of the evidence will be necessary. The salient facts appear to be as follows:

The appellant, Paducah & Illinois Ferry Company, is a corporation operating a ferry under a franchise granted by the city of Paducah and McCracken County Court, between Paducah and points on the Illinois shore and at a point in Livingston county, using therefor a steamboat called the G. W. Robertson. Its capital stock, amounting altogether to $40,000.00, was held at the time of the institution of this action, one-fourth by the appellee, C. L. Robertson, one-fourth by J. T. Barnes and one-half jointly by Louis Clark and Ophelia Clark, The corporation's board of directors consisted of Louis Clark, who was president, Ophelia Clark, secretary and treasurer, and J. T. Barnes. Prior to January 6, 1914, the corporation seemed to have become somewhat involved in debt, and there had been an unsuccessful attempt made by appellee to have its business and property placed in the hands of a receiver; with a view of re-

lieving itself of these embarrassments, its board of directors met on that day and unanimously adopted the following resolution:

"Be it resolved by the Board of Directors of Paducah & Illinois Ferry Company, subject to the ratification of the stockholders of the corporation, that the property and effects of the corporation be offered for sale at public auction on February 10, 1914, at 10:00 o'clock a. m., at the boat landing at the foot of Kentucky Avenue, or on the boat, to the highest and best bidder for one-third cash, and the balance in equal installments due three, six, nine and twelve months, to be evidenced by notes of the purchaser with approved security, bearing interest from date until paid, at six per cent per annum, with the privilege to the purchaser to pay all cash, if desired.

"No person shall be accepted as a bidder for said property until he shall have deposited with the auctioneer his certified check, payable to the corporation, in the sum of $1,000.00, which, if he shall be the successful bidder, and shall comply with the terms of sale, shall be deducted from the sale price, and if he shall be the successful bidder and fail to comply with the terms of sale, the said sum shall be forfeited to the corporation as damages for failure to comply with his bid.

"Said property shall be offered, first: the franchise, docks, landing privileges and landing at Livingston Point. Second: The Steamer G. W. Robertson. After said property shall be sold separately, as above stated, then the steamer G. W. Robertson and the aforesaid franchises, etc., shall be offered as a whole, and the method of sale bringing the highest price shall be accepted.  *  *

"It was thereupon moved and seconded that the said sale be duly advertised in the local papers of Paducah, and in the Waterways Journal and Memphis Commercial Appeal, at least two insertions each week in the latter. There being no further business, the meeting adjourned."

At the same time and place, and immediately upon the adjournment of the board of directors, the stockholders met and adopted the following resolution:

"At a meeting of the stockholders of the Paducah & Illinois Ferry Company, this day held at the office of J. D. Mocquot, in Paducah, Ky., there were present in person the following persons: Louis Clark, Mrs. Ophelia Clark, C. L. Robertson, and J. T. Barnes, hold-

ing all of the stock of the said corporation. The resolution adopted by the board of directors of the corporation at the meeting this day held and the action of the Board of Directors was read to the meeting and, upon motion, duly seconded, the action of said Board was ratified unanimously. There being no further business to come before the meeting, it adjourned.''

After the adoption of the above resolution by the board of directors and stockholders, the steamboat and other property of the corporation was advertised for sale as therein directed. It is claimed by the appellee, Robertson, that he was authorized by the board of directors or stockholders to attend to the matter of advertising the sale, but such authority does not appear from the resolutions of the board of directors or that of the stockholders. On the day fixed for the sale of the property, Louis Clark, the president of the board of directors, seemed to have received information that there would be no bona fide bidders for the property at anything like its real value, so he, as president, and Mrs. Ophelia Clark, secretary of the board of directors, called a meeting of its members for 9:30 o'clock a. m., on the day of sale, with a view of taking action looking to a postponement of the sale, which was to take place at 10 o'clock a. m. of that day. The two Clarks and J. T. Barnes, the other director, met at the time indicated at the store of Louis Clark. Although the object of the meeting was stated to Barnes by the president of the board, he left before any action was taken, but at that meeting Louis and Ophelia Clark, constituting a majority of the board of directors, adopted the following resolution:

''A meeting of the directors of the Paducah & Illinois Ferry Company was held at the office of the company on this the 10th day of February, 1914, at 9:30 a. m.

''Resolved, That the ferry boat G. W. Robertson and Ferry franchise be not sold this day.

''LOUIS CLARK, President.

''OPHELIA CLARK, Secretary and Treasurer.

''J. T. Barnes leaving the meeting before it closed. There being no further business to come before the meeting, it adjourned.''

After the adoption of this resolution, Louis Clark, president of the board of directors, went to the place

of sale at the boat landing and there notified Cecil Reed, who was undertaking to act as auctioneer, of the action of the board of directors postponing the sale, and objected to the sale of the boat and other corporate property. Despite this notice and objection from Clark, Reed proceeded to cry the sale in accordance with the advertisement, and finally knocked down the boat, franchise and other property to the appellee, Charles L. Robertson, for $2,500.00, this being the amount of the latter's bid. Reed then accepted from appellee the $2,500.00 in cash and made manual delivery to him of the boat, and also such delivery as could be made of the franchise, landings, docks and wharves included in the sale. Appellee held the boat for about ten days, and then sold it for $10,000.00.

It is appellant's contention that, even in the absence of such action as was taken by the board of directors in calling off or postponing the sale, Reed was without authority to make it, and that he made the sale at the instigation of the appellee, Robertson, and by his employment. This contention, is, in part, untenable. It is true that what Reed did was by the procurement of the appellee, Robertson, but it is fairly apparent, from the evidence that Clark, the president of the board of directors, was informed prior to the day of sale that Reed had been selected as the auctioneer to make it. Clark had previously contemplated securing one Husbands to act as auctioneer in making the sale, but, when advised of the selection of Reed as auctioneer, he made inquiry of Bradshaw, president of a Paducah bank, with reference to his fitness for such service, and, upon being informed by Bradshaw that Reed was a competent man, he made no objection to his acting as auctioneer at the sale. In view of these facts, it is our conclusion that Clark, as president of the board of directors, acquiesced in the appointment of Reed as auctioneer.

But, back of this question, is the appellant's more serious contention, that the sale was unauthorized because of the action taken by the board of directors, before the sale, to prevent it, and the communication of this action by its president both to the auctioneer, Reed, and the appellee, Robertson, before the sale. The legal effect of the action taken by appellant's board of directors February 14, 1914, and before the sale, was not to rescind its previous act of January 6, 1914, approved

by the stockholders, ordering the sale of its corporate property, but merely to postpone the sale to a later date. If the board of directors had this power, the conduct of Reed, the auctioneer, in proceeding with the sale in willful disregard of the order of the board of directors that it be not made, rendered the sale invalid for appellee, purchaser at the sale, as well as the auctioneer, had been notified by the president of the board of the order of postponement. In 10 Cyc., 758, it is said:

"Generally speaking, the directors of a joint stock corporation are trustees in the control of its property and in the direction and management of its business affairs. As hereafter seen, shareholders have not, as a general rule, any direct voice in the management of the business affairs of the corporation, but their voice can be heard only when speaking through the directors, who are deemed in a qualified sense their agents, but are really mandataries. There are three different views with reference to the duties and powers of directors: (1) That they are the body which has been incorporated, and hence the corporation itself. This is true in some cases. (2) That they are general agents of the shareholders. (3) That they are special agents of the shareholders in the sense that the public are bound to take notice of the limits of their authority. But plainly, they are not agents in the strict sense; but an examination of their powers will lead to the conclusion that in most cases they derive their authority partly from the voice of the shareholders expressed in general meeting duly convened, partly from the charter, partly from applicatory statutes, partly from by-laws duly enacted, and (in some cases) partly from other governing instruments."

Again, on page 760 of the same volume, it is said:

"Loose expressions are found in judicial opinions to the effect that the board of directors or trustees practically constitute the corporation, and in general may act as the corporation, and, unless specially restricted, exercise the corporate powers. But this in strictness is only true of those corporations in which the board of trustees or directors are themselves incorporated and are the corporation, which we have already seen is often the case. In ordinary business corporations the powers of the board of directors, as we shall presently see, fall far short of being co-equal with the powers of the corporation. It is hence better said that 'the directors, in the absence of restrictions in the charter or

by-laws, have all the authority of the corporation itself in the conduct of its ordinary business.' ''

It would be a better statement of the law to say that the board of directors of a corporation, unless restricted by its charter or by-laws, has full control and management of the corporate business and property, and that the shareholders cannot act for the corporation, either individually or collectively, as they are not agents for the corporation and cannot bind it either by their acts, declarations or admissions; and the weight of authority seems to be that the power of stockholders is mainly limited to a few matters concerning its internal affairs, viz., the election of its directors, the increasing of the capital stock, the adding to the powers and purposes of the corporation, and the authorizing its dissolution. So, ordinarily, neither the assent nor dissent of the stockholders can affect the validity of the acts of the directors. Among the powers that may be exercised by the board of directors is that of mortgaging or selling the corporate property for the purpose of paying the corporate debts. But, according to the weight of authority, the board of directors, in the absence of the approval of the stockholders, is without authority to direct a sale of all the corporate assets or property for the purpose of dissolving the corporation. Whether the directors can, without the assent of the stockholders, sell all the corporate property for the purpose of applying its proceeds to the purchase of other property to be used in the business of the corporation, is involved in much doubt.

It is not made to appear in this case that the action of the board of directors of January 6, 1914, directing a sale of all of the appellant's corporate property, contemplated a dissolution of the corporation. Neither the record of that meeting nor that of the meeting of the stockholders held at the same time indicates any such intention. Therefore, it remained within its power to buy a new franchise and boat and continue business. Section 6496, Thompson on Corporations, in dealing with this question, announces the following principle:

''Both courts and law writers have undoubtedly fallen into some error because of a failure to distinguish between the dissolution of a corporation and that of the sale and disposal of its property and franchise. Sufficient has already been said to show that a corporation is not dissolved, *ipso facto,* by the sale of all its prop-

erty, or by the sale of its property and the cessation of
business, as a corporation could exist without property
and without transacting business. In this condition it
could sue and be sued. And even in such condition it
might again acquire property and resume its corporate
business. In case of such sale of the corporate prop-
erty, the corporation will still exist in contemplation of
law and may sue and be sued so long as there is no sur-
render of the charter.''

This principle was recognized by this court in the
case of Geo. T. Stagg Co. v. E. H. Taylor, Jr., & Sons,
113 Ky., 709, in the opinion of which it is said:

''E. H. Taylor & Company was not dissolved, nor
had it ceased to exist, by reason of the fact it conveyed
its distilleries with the appurtenances to George T. Stagg
Company. It maintained its organization, and con-
tinued to own property during its existence. The annual
election of its officers evinced a purpose to continue an
existence as a corporation, besides the testimony tends
to prove that its stockholders never intended a dissolu-
tion of the corporation during its corporate existence as
fixed by its articles of incorporation.''

The cases afford many instances of the failure to
perform certain acts and many contingencies the hap-
pening of which do not, *ipso facto,* dissolve the cor-
poration, but such instances and contingencies only fur-
nish grounds for forfeiture and dissolution at the suit
of the State or some interested party. Circumstances
which constitute grounds for proceedings to have the
corporation dissolved do not of themselves operate as a
dissolution. We are satisfied, therefore, that appellee's
contention that the action of the board of directors in
this case was a dissolution of the corporation, and, there-
fore an action peculiarly within the power of the stock-
holders, over which the board of directors had no con-
trol, cannot be sustained.

But it may be conceded, for the purposes of this case,
that the action referred to did look to a dissolution of
the corporation and its going out of business as such.
But, if so, the action taken by the stockholders in ap-
proving that of the board of directors ordering the sale
of the corporate property, empowered the latter to carry
out the will of the stockholders. In other words, the
action of the stockholders did not divest the board of
directors of authority to control the corporate property,
as had been its wont, or of its authority to continue in

the management of the corporate business.  The board still retained all its powers, including authority to see to the advertising of the sale and manner of conducting it.  Neither the record of the action taken by the board of directors, nor that of the stockholders, with respect to the sale of the corporate property, shows the appointment of a special agent to advertise or conduct the sale, therefore, the entire matter must be regarded as having been left to the control of the board of directors.  This being true, if the board of directors, after causing or permitting the sale to be advertised, became advised that it would cause a sacrifice of the corporate property to sell it on the 10th of February, 1914, as fixed by the resolution adopted by it on January 6, 1914, it had the power without the consent of the stockholders to postpone the sale of the property to a later date; and, especially would this be so, if the information that the sale of the property on the day directed would result in its sacrifice, came to the board of directors too near the hour fixed for the sale for it to have an opportunity to consult with or call a meeting of the stockholders.

It does not follow that, because approval by the stockholders of the action of the directors looking to the sale of all the corporate property, was necessary, the latter did not have authority to postpone or change the date of the sale.  It is not to be overlooked that February 10th was named by the directors and not by the stockholders as the date for the sale.  The essential thing necessary on the part of the stockholders, and what they were asked to do, was to authorize the sale of all the property by the board of directors.  Doubtless any other date for the sale, not too remote, would have been as acceptable to the stockholders as February 10th.  Having authorized the sale of the property by the board of directors, the work of the stockholders was complete; for, without further action by them, the directors, under the general power appertaining to their office, had the right to temporarily delay or change the date of the sale, if, in their sound discretion, such delay or change was necessary to prevent the sacrifice of the corporate property and consequent loss to the creditors or stockholders of the corporation.

If we are correct in this conclusion, the only question remaining to be determined is, was the directors' meeting of 9:30 a. m., February 10th, at which was adopted the resolution postponing the sale advertised for that

day, legally held? As previously stated, there were but
three directors of the appellant corporation, Louis Clark,
Ophelia Clark and J. T. Barnes. The resolution adopted
at that meeting shows that all the members of the board
of directors were present, but that J. T. Barnes left the
meeting before the resolution was adopted. According
to the testimony of Louis Clark, a messenger had been
sent to Barnes to notify him of the time and place of this
meeting. The messenger did not testify on the trial, but
J. T. Barnes, in giving his testimony, denied that a mes-
senger notified him of the time or place of the meeting.
He admitted, however, that he was at the place of meet-
ing at 9:30 a. m., the time fixed therefor, but that, with-
out previous knowledge of the meeting, he merely
stopped at the place on his way to where the sale of ap-
pellant's property was to be made at ten o'clock. Both
Louis Clark and Mrs. Ophelia Clark testified that Barnes
was at the place of meeting at the time fixed therefor,
and that when Mr. Clark stated to him the object of the
meeting, he left and did not participate in the action
then taken. These statements of the Clarks were not in
terms contradicted by Barnes. We do not mean that
Barnes admitted he was informed of the object of the
meeting while with the Clarks, but that he contented him-
self with saying that, though there was some conversation
between him and the Clarks with reference to the holding
of a meeting, he did not remember what was said. It is,
however, apparent from this testimony as a whole, that,
whether notified or not, Barnes did attend the place of
meeting at the time fixed for the meeting, and that,
though he did not remain at or participate in the meet-
ing, he was informed of its object and left to keep from
participating in the action taken. His absence still left
a majority of the board of directors to take action, and
this they did by adopting the resolution which directed
that appellant's property be not sold February 10, 1914,
as advertised. We think the action thus taken by a ma-
jority of the board of directors was valid. The necessity
for giving notice to the members of a board of directors
of the time and place of a special meeting such as this
arises out of the requirement of the law that they, or a
majority of them, shall act as a board and the best way
to secure their attendance is to give each of them notice
of the time and place of the meeting; but where all of the
members attend the place fixed for a special meeting of
the board, though such attendance be accidental, neces-

sity for the giving of notice is obviated. We are unable to find that there is in this State any statutory regulation of board meetings of this character, but in 10 Cyc., 326, it is said:

"It should constantly be kept in mind that no matter where the meeting is held, or how defectively the members are notified, the proceedings will bind all who appear at the meeting and participate in it without dissent."

And to this we may properly add that where such a meeting is attended by only a majority of the board, if the proceedings are participated in by such majority and they concur in the action taken, the proceedings will, in that event, be as legal and binding for all purposes as if all members of the board of directors had been notified thereof. In Thompson on Corporations, Section 1142, we find this statement of the law on the subject under consideration:

"Special Meeting—When Valid Without Notice.—The rule that all directors are entitled to notice of special meetings, and that acts done or business transacted without such notice, is invalid, like most other general rules, is subject to some exceptions. * * * So, emergencies may arise which will excuse the giving of notice to all of the directors of a special meeting. * * * The exigency demands immediate attention to save the property and to save expense. * * * Another exception to the rule is that notice may be dispensed with where all the directors are present and participate in the proceedings. The only object of notice is that the directors have an opportunity of being present at the meeting and taking part in its proceedings."

If the facts and circumstances upon which a majority of appellant's board of directors acted in calling the special meeting held by them on the morning of February 10, 1914, did not present an emergency requiring the action taken at the meeting, it would be difficult to conceive a state of facts that would constitute an emergency. The fact that appellant's entire property, worth, according to the weight of the evidence, $15,000.00, was knocked down at the sale at the grossly inadequate price of $2,500.00, demonstrates the urgent need of such action as was taken by the majority of appellant's board of directors in attempting to prevent the sale. That it failed of success was not because of any lack of effort on the part of the two directors taking the necessary action,

but because of the auctioneer's willful disregard of such action, in which he was aided by the appellee, Robertson, purchaser of the property attempted to be sold. The illegality of the sale being manifest, neither the appellant corporation, its board of directors, nor stockholders were bound by it.

Appellant might have brought an action in equity to have the sale set aside, or an action at law to recover the specific property held by appellee, but it also had the right to resort to the remedy pursued in the present action, that is, treat appellee's possession of the property as a wrongful taking and conversion thereof and sue to recover its value. Sutherland-Innes Co. Ltd. v. Weaver, 143 Ky., 827; Eversole v. Moore, 3 Bush, 49; Brocking v. O'Bryan, 129 Ky., 544.

The action of the auctioneer in selling the property, or that of appellee in purchasing it, cannot be justified upon the ground that the latter was authorized by appellant's board of directors to advertise and procure the sale of the property. The alleged agency of appellee is not shown by any competent evidence appearing in the record. There was nothing in the action of the board of directors or that of the stockholders showing the appointment of appellee as such agent. The corporate board of directors should act in official meeting in delegating a delegable power, and such act must be shown by its records in order to bind it. Star Mills v. Bailey, 140 Ky., 194.

It follows, from what has been said, that the trial court erred in giving the peremptory instruction directing a verdict for appellee. For the reasons indicated, the judgment is reversed and cause remanded for a new trial consistent with the opinion.