KIERCE v. CENTRAL VERMONT RY., Inc.

PEARSON v. SAME.

Nos. 372, 373.

Circuit Court of Appeals, Second Circuit.

Aug. 12, 1935.

Horace H. Powers, of St. Albans, Vt., and John W. Redmond, of Newport, Vt., for appellant.

Alfred T. Rowe, of New York City (Sol Gelb, of New York City, of counsel), for appellee Pearson.

Ernest W. Gibson, Jr., and Frank E. Barber, both of Brattleboro, Vt., for appellee Kierce.

Before MANTON, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

These actions arise out of a collision between two trains which occurred near

Fitchville Junction, Conn., on the single-track line of the defendant. Kierce was the conductor and Pearson the engineer of a passenger train known as train No. 1, which left New London, Conn., on July 6, 1932, on its regularly scheduled run for Brattleboro, Vt. It arrived at Yantic, Conn., on time at 4:10 p. m. Prior to its arrival, the railroad telegraph operator at Yantic had received an order from the railroad dispatcher at New London that train No. 1 was to take a siding at Fitchville Junction, which was about one mile north of Yantic, in order to allow a south-bound freight, known as extra 468, to pass. The order was also delivered to the telegraph operator at Willimantic, who thereupon allowed extra 468 to proceed on its way. When train No. 1 arrived at Yantic, the conductor did not learn of the said order, and in consequence train No. 1 proceeded past the siding at Fitchville Junction and shortly thereafter at a curve in the track came into a head-on collision with the freight train, causing the death of Kierce and Pearson. Witnesses for the defendant testified that upon receipt of the aforesaid order the railroad operator at Yantic set a signal known as the "order board" in the "stop" position, and that the decedents ran by this signal. For the plaintiffs, one witness, who had testified before the coroner three days after the accident that he had not noticed the signal, testified by deposition introduced at the trial that it was in the "proceed" position. The position of the order board signal was substantially the only disputed fact. Such additional facts as need be stated will appear in the subsequent discussion.

The appellant's first point relates to an argument which the plaintiffs' counsel was allowed to make to the jury because the defendant introduced a deposition of Herman J. Gibbs instead of producing him as a witness at the trial. Gibbs was the telegraph operator at Yantic who received the order directing train No. 1 to take the siding at Fitchville Junction and who put out the "stop" signal, if, as the defendant's witnesses testified, it was put out. At the time of the trial he was still in the defendant's employ, but he resided in Yantic and was beyond reach of process by the District Court. Prior to the trial plaintiff Pearson had caused Gibbs' deposition to be taken, but the plaintiffs did not offer it in evidence. The defendant wished to use it, and, with the consent of the plaintiffs, read it to the jury. In the summation for the plaintiff Pearson, counsel commented on the fact that so important a witness had not been produced by the defendant and argued, among other things, that it feared to have him subjected to cross-examination lest adverse testimony should be extracted from him. Upon the defendant's objection, the court ruled that this was fair argument, and stated that Gibbs would still be allowed to testify if the defendant would produce him.

■ If a party takes the deposition of his own witness, the other side may cross-examine and no comment should be made because the witness was not produced in court. The law recognizes testimony by deposition as equivalent to testimony at the trial. But, where a party is compelled to take the deposition of a witness whose testimony will be favorable to the opposing side, it cannot be considered improper to comment on the fact that the witness has not been subjected to cross-examination by the party against whom the witness testifies and to ask the jury to scrutinize his testimony with that fact in mind. It would not do for the court to charge that an inference must be drawn that, if produced in person, the witness would have testified adversely. Lamport v. General Accident, Fire & Life Assurance Corporation, 272 Mo. 19, 39, 197 S. W. 95; Producers' Coal Co. v. Mifflin Coal Mining Co., 82 W. Va. 311, 319, 95 S. E. 948. But it is not improper to comment as above indicated. The extent of allowable comment rests largely in the trial court's discretion. Thompson, Trials (2d Ed.) vol. 1, §§ 958, 964. We cannot say that discretion was so far abused in this respect as to require reversal.

■ Of similar character is the objection to counsel's argument to the jury as to what the deceased engineer and conductor would say respecting the order board signal if they could testify. It was certainly permissible for the plaintiffs to argue that an experienced train crew would not be likely to run through a stop signal. To make the argument more personal by urging that they would say they did not do so, if they could testify, we cannot regard as seriously prejudicial error. It

was not an appeal to passion or prejudice, as in Citizens' Sav. Bank & Trust Co. v. Fitchburg Mutual Fire Ins. Co., 86 Vt. 267, 84 A. 970, and New York Cent. R. Co. v. Johnson, 279 U. S. 310, 49 S. Ct. 300, 73 L. Ed. 706; nor was it stating as a fact something not in evidence, as in Ward v. Ward, 91 Vt. 157, 99 A. 635, and Calliguiri v. Marro, 93 Vt. 186, 106 A. 780. Even if the argument be deemed improper, it would not justify reversal. See Drown v. Oderkirk, 89 Vt. 484, 489, 96 A. 11.

 Another assignment of error relates to the admission in evidence of the defendant's Rule 215, the material portions of which read as follows: "In every case where a train carrying passengers is concerned * * * 'complete' must not be given to an order advancing an opposing inferior train until the signature of the conductor of the superior train * * * has been received by the train dispatcher."

As the signature of Conductor Kierce of train No. 1 never was obtained, it is contended that this order was violated in allowing extra 468 to proceed southward out of Willimantic, and that such violation constituted negligence and was a cause of the collision. These issues were presented to the jury under a charge which instructed them that the two principal questions for decision were: (1) Was the defendant negligent in running its extra freight from Willimantic to Fitchville Junction on the time of its superior passenger train before the signature of the conductor of the superior train had been received and did this cause or was it one of the causes of the collision? and (2) Was the "stop" signal set when the passenger train arrived at Yantic? They were told that the plaintiffs had the burden of proof upon the first question and the defendant had the burden of proof upon the second, and that the defendant was not liable if the jury failed to decide question one for the plaintiffs or if the "stop" signal was set. Thus it is apparent that the verdicts rest on a finding that the stop signal was not set and that Rule 215 was violated.

When this rule was offered, the defendant objected to its admission on the ground of immateriality because it was for the protection of passengers only. The court so ruled, but later reversed this ruling and admitted the rule in evidence. In contending that this was error, the defend-

ant relies on cases which apply the familiar principle that the violation of a rule adopted for the protection of a certain class of persons creates no right of action in favor of a plaintiff who is outside that class. Reynolds v. New York, O. & W. Ry. Co., 42 F.(2d) 164 (C. C. A. 2), is perhaps the closest to the case at bar of the authorities relied upon. There it was held that a rule respecting the protection by flagmen of a train which might be overtaken by another train was not intended for the protection of a section crew riding on a gasoline motorcar. But this is far from holding that the rule would not have protected a member of the crew of the train had a collision occurred between two trains. To us it seems too plain for argument that Rule 215 was for the protection of the train; that is, of all who were properly aboard it, whether passengers or train crew. No authority has been called to our attention which is inconsistent with such view.

The defendant also contends that the rule is immaterial because no negligence of the defendant in sending its freight train out of Willimantic can be deemed a proximate cause of the accident; that the sole proximate cause was the failure of the defendant to set the "stop" signal at Yantic, if it was not set, or the act of the decedents in running past it, if it was set. These events, it is argued, were closer in time to the accident and were independently sufficient to cause the result. We cannot agree that the failure to set the signal was independently sufficient to cause the accident. If the freight had been held at Willimantic until Rule 215 was complied with, the collision could never have happened. That rule no less than the rules requiring the signal to be set and the conductor to observe it and get a "clearance card" were designed to prevent such catastrophies. Only because rules were violated both at Willimantic and at Yantic did the accident happen. If the violation of the rules at Yantic was that of the decedents in running through the signal, their act would, under the authorities, prevent recovery. Paster v. Pennsylvania R. R., 43 F.(2d) 908 (C. C. A. 2). But if the violation of the rules was that of the defendant in failing to set the signal, that act is a cause operating concurrently with the violation of Rule 215 to produce the collision. The wrongful act of letting the freight pro-

ceed before the order was properly "completed," as well as the act of failing to signal train No. 1, continued to operate as causes of the collision until the very moment of impact. Hence we find no error in admitting the rule in evidence or in the charge of the court with regard to a violation of it, unless it be in respect to the burden of proof.

█ If the plaintiffs were relying upon failure to set the "stop" signal as an act of negligence imposing liability upon the defendant, the burden of proving such negligence would clearly be upon them; but this was not the negligence submitted to the jury. Liability was predicated upon failure to observe the standard of care required by Rule 215, and the jury was told to determine whether such failure was a cause of the collision and that the burden of proof on this issue was on the plaintiffs. The defendant's contention that the plaintiffs also had the burden of proving that the "stop" signal was not set rests upon the argument of proximate cause. It is urged that, if the decedents ran through the signal, their own carelessness would be deemed the proximate cause of their deaths, and therefore the plaintiffs had the burden of negativing this cause in order to establish that a violation of Rule 215 was the proximate cause. The cases which have established the doctrine that a plaintiff whose damages result from his own violation of a rule formulated for his safety may not recover say nothing as to where lies the burden of proving such violation. In Paster v. Pennsylvania R. R., 43 F.(2d) 908, we discussed the authorities and commented on the similarity of this defense to that of contributory negligence. In the federal courts the burden of proving contributory negligence is upon the defendant. Although contributory negligence is but a partial defense under the Employers' Liability Act (45 USCA § 51 et seq.), while the doctrine of the Supreme Court cases discussed in the Paster Case is a complete bar to recovery, we cannot see that this difference affects the element of causation. If the defendant must prove the partial defense, no reason is apparent why it should not also have the burden of proving the complete defense.

█ Finally the defendant contends that verdicts should have been directed in its favor because the evidence was overwhelming that the decedents ran past the "stop" signal at Yantic. The only evidence that the signal was not set was the deposition of Gilman taken nearly two years after the accident. This contradicted his own sworn testimony before the coroner, given three days after the accident, to the effect that he did not know whether the signal was up or down. His attempted explanation is that he had not understood the questions on the former occasion. The verity of his later testimony is subject to the gravest suspicions, but what credence to give it was within the province of the jury. The situation is not identical with that presented in Pennsylvania R. Co. v. Chamberlain, 288 U. S. 333, 53 S. Ct. 391, 77 L. Ed. 819. There the plaintiff's witness did not give direct testimony that he had seen the accident, but inferred from the sound of a crash that the cars on which the decedent was riding had been hit, although the noise might have come from shunted cars on a different track. This was held insufficient to contradict the positive testimony of eyewitnesses. Here Gilman claims to have been himself an eyewitness that the signal was not set. That a greater number of other witnesses dispute this and that Gilman himself had previously given a contradictory statement would not, in our opinion, justify an appellate court in overriding the jury's verdict.

Judgments affirmed.