# JOHN R. FOLEY v. WABASHA-NELSON BRIDGE COMPANY.[1]

May 3, 1940.

No. 32,323.

*John R. Foley* and *Sawyer & Sawyer,* for appellant.
*Murdoch & Hatfield,* for respondent.

HOLT, JUSTICE.

Plaintiff sued to recover $2,450, and interest, on an employment contract, and was awarded a verdict by the jury. On defendant's motion in the alternative for judgment notwithstanding the verdict or a new trial, the court granted judgment, from which plaintiff appeals.

The facts as to which there is no dispute may be thus stated: In 1929 defendant was incorporated. The only purpose or object was the construction and operation of a toll bridge with approaches across the Mississippi River at Wabasha, for which a franchise or permission had been secured. The venture proved

[1]Reported in 291 N. W. 903.

unprofitable, and the stockholders and board of directors decided to dispose of the whole enterprise. It was thought that the only possible purchaser might be the states of Minnesota or Wisconsin or the United States. Plaintiff, an experienced lawyer and long-time resident of Wabasha, became interested. Mr. Webb was the president and general manager of defendant and had so been since its organization. He and plaintiff had many talks in respect to the employment to attempt to dispose of the bridge and all the rights and assets of defendant. A proposed contract of employment for two years was drafted by defendant's board of directors, who, however, decided to submit it to a special meeting of the stockholders to be called. Such stockholders' meeting was called and held November 23, 1936, at which the stockholders unanimously determined to enter the proposed contract and directed the board to execute the same. On November 27, 1936, the contract was duly signed, sealed, and acknowledged; and at a special meeting of the board of directors on December 15, 1936, the execution of the contract by its president and secretary was duly approved. Under this contract plaintiff, in the event a sale was effected, was to receive ten per cent of the purchase price up to $500,000 and 25 per cent of any price in excess thereof. No sale could be made unless first submitted to and approved by defendant. In addition, the contract had this provision, which gives rise to this lawsuit, that during the first year of the employment defendant should place $1,500 at the disposal of plaintiff to be drawn on by him for his expenses during such year, and also a like amount for the second year, these sums "to be used as expense money in connection with the attempted sale"; but the $1,500 for the second year could not be drawn upon if a sale was effected the first year of the employment. It was also agreed that plaintiff was at liberty to employ such other and further assistance as he saw fit provided the expense thereof was paid by him. Over objection, testimony was received that on or about January 23, 1937, Mr. Webb verbally agreed with plaintiff to modify the written contract so that instead of the placing of

$1,500 at the disposal of plaintiff to draw on for his expenses for each of the two years, the sum of $1,500 would be paid plaintiff during the first year of the employment absolutely and likewise $1,500 during the second year. Plaintiff admitted the receipt of $550. Defendant put in issue the modification, the consideration therefor, and the authority of Mr. Webb to make it. Defendant moved for a directed verdict. This was denied, and the court charged the jury, in substance, that if they found that Mr. Webb agreed orally with plaintiff to modify the contract in the respect mentioned, a verdict for $2,450, with interest, was warranted. As above stated, on defendant's motion in the alternative, judgment notwithstanding the verdict was ordered.

All assignments of error are directed to the order granting judgment. We assume, without so deciding, that the evidence justified the jury in finding that Mr. Webb orally agreed with plaintiff to modify the contract in the respect he claims. Nor do we consider defendant's claim that there must be a consideration in order to have a valid modification of a contract which is in the course of performance. Consideration for a modification of an executory contract may be found in the mutual concessions involved in the change.

We therefore go directly to the authority of Mr. Webb, the president and general manager of defendant to modify the contract. The law is accurately stated in 2 Fletcher, Cyc. Corp. (Perm. ed.) §§ 667 and 671. Section 667 is:

"An officer or agent of a private corporation, intrusted with the general management and control of its business and affairs, has implied or apparent authority to do acts or make any contracts in its behalf falling within the scope of the ordinary and usual business of the company, and limitations and restrictions placed upon his express or implied authority, of which persons dealing with him have neither actual nor constructive notice, will not serve to restrict such powers to the prejudice of innocent third persons."

Section 671:

"The general manager of a private business corporation may make contracts which are in the course of the ordinary business of the company, and within the scope of his express, implied or apparent powers, but unusual, extraordinary or unnecessary contracts which are not within the scope of his implied or apparent powers will not bind his principal."

The record shows that plaintiff was a stockholder of defendant and had received notice of stockholders' meetings. This would include the one authorizing the written contract with plaintiff and also the stockholders' meeting of January 23, 1937, at about which time plaintiff claims the oral modification with Webb took place. The record is conclusive that Webb, as president and general manager, did not undertake any matter of importance without first obtaining authority to act from the board of directors. Plaintiff, an experienced attorney, with knowledge that the board of directors considered his employment as agent to sell the entire assets of defendant so extraordinary and unusual that the board would not authorize its execution by the president and secretary until it was first approved by a vote of the stockholders, cannot reasonably claim to be an innocent third party against whom the defendant is estopped or precluded from alleging want of authority in its president and general manager to agree to a modification thereof. Plaintiff cites cases to the effect that even in written contracts executed under the direction of the board of directors of a private corporation its president and general manager has implied authority to modify as to minor or unimportant terms. Paducah & Illinois Ferry Co. v. Robertson, 161 Ky. 485, 171 S. W. 171; Producers Coal Co. v. Mifflin Coal Min. Co. 82 W. Va. 311, 95 S. E. 948. The Paducah case was one where the board of directors, with the approval of the stockholders, directed the entire property and assets of the corporation to be sold at public auction; but an hour or so before the time of the sale the board of directors ordered the sale postponed, and the auctioneer, in face of this action, made a sale of the corporation's assets for a

fraction of its value to a purchaser in collusion with the auctioneer. In the action brought by the corporation against the purchaser for conversion, it was held that although the sale had been advertised by the board of directors, thereto authorized by vote of the stockholders, for a certain date, the board of directors retained authority to postpone or alter the date of such sale. The Producers Coal Company case is not helpful, for the reversal was placed upon erroneous instructions. Incidentally, the question was raised of the authority of the general manager of the plaintiff corporation to modify or abrogate a prior agreement between the plaintiff and defendant, and it was held that a general manager of a corporation has authority to bind it by such contracts as are reasonably incident to the management of the business entrusted to him, and it was not incumbent on the corporation to prove express authority. It must be said that in the case at bar the contract involved is not one relating to the ordinary business of defendant nor may the alleged modification thereof be said to be unimportant or insignificant. Three thousand dollars is a substantial sum to a corporation engaged in an unprofitable business.

While neither party can cite any authority on all fours with the instant case, we think the following cases lend defendant some support: Grant v. D. M. & N. Ry. Co. 66 Minn. 349, 69 N. W. 23; Howard v. Winton Co. 199 Cal. 374, 249 P. 511, 47 A. L. R. 1012; Aliunde Cons. Min. Co. v. Arnold, 16 Col. App. 542, 67 P. 28; Pickens Co. v. Thomas, 152 Ga. 648, 111 S. E. 27, 21 A. L. R. 1438; Stoneman v. Fox Film Corp. 295 Mass. 419, 4 N. E. (2d) 63, 107 A. L. R. 989; Carney v. New York L. Ins. Co. 162 N. Y. 453, 57 N. E. 78, 49 L. R. A. 471, 79 A. S. R. 347. In the last mentioned case it was held that whether a contract of life employment, made in behalf of the corporation by its president and actuary, pursuant to authority of its board of trustees or directors, was reasonable was for the court and not for a jury to decide. Under the facts disclosed by the record herein, it must be held an unreasonable modification of a contract

which both plaintiff and Mr. Webb knew that the board of directors felt beyond their authority to make unless first approved by a vote of the stockholders. Plaintiff invokes for Mr. Webb the express authority conferred by a by-law of defendant granting its president the "general and active management of the business of the company," but defendant's business was the operation of the bridge, collecting the toll, and employing men and agents for that purpose. This does not include employing an agent for the period of two years to dispose of the company's entire business, rights, and assets. In our opinion, the record is conclusive that Mr. Webb did not, to plaintiff's knowledge, possess authority to bind defendant by the alleged oral modification of January 23, 1937.

The judgment is affirmed.

Mr. Chief Justice Gallagher, being engaged on the pardon board and not having heard the arguments, took no part in the consideration or decision of this case.