Harold YANOW, Appellant,

v.

WEYERHAEUSER STEAMSHIP COMPANY, a corporation, Appellee.

No. 15452.

United States Court of Appeals Ninth Circuit.

Nov. 21, 1957.

Rehearing Denied Jan. 17, 1958.

As Amended Feb. 21, 1958.

4. Hayward v. Looney, 10 Cir., 246 F.2d 56, 57.

Peterson, Pozzi & Lent, Nels Peterson, Gerald H. Robinson, Portland, Or., Norman Leonard, San Francisco, Cal., for appellant.

Gray & Lister, H. Lawrence Lister, Floyd A. Fredrickson, Portland, Or., Lasher B. Gallagher, San Francisco, Cal., for appellee.

Before DENMAN, Circuit Judge (Retired) and BARNES and HAMLEY, Circuit Judges.

DENMAN, Circuit Judge.

This case was transferred from the Circuit Court of the State of Oregon, County of Multnomah, to the United States District Court for the State of Oregon on the verified petition of the Weyerhaeuser Steamship Company, of which we take judicial notice, alleging as follows:

"At all times during July, 1954, and at all times since then defendant was and now is a corporation organized and existing exclusively pursuant to the laws of the State of Delaware and on July 31, 1954, petitioner was and at all times since has been and now is exclusively a citizen of the State of Delaware. Petitioner was not at any time hereinabove mentioned nor is it now a citizen of the State of Oregon.

"That at all times hereinabove mentioned plaintiff, Harold Yanow, was and now is a citizen and resident of and domiciled in the State of Oregon."

Plaintiff Yanow appeared and moved for a jury trial thereby accepting as true the allegations creating the diversity jurisdiction.

He appeals from a judgment in which the verdict held the steamship company not to be liable for injuries he alleged he received by slipping on grease on the deck of the steamship company's steamship, the W. H. Peabody. He complied with Fed.Rules Civ.Proc. rule 75(d), 28 U.S.C.A., in stating his points on appeal.

The evidence shows that Yanow was working as a longshoreman at Coos Bay, Oregon, on August 1, 1954, aboard appellee's vessel the W. H. Peabody, a 10,000 ton Liberty Ship. The gang he was working with was engaged in stowing the deck load of lumber at No. 2 hatch. This involved moving loads of lumber on rollers into position where the men were working to build up the level of the "floor". A load of lumber had just been landed and appellant needed a peavey to facilitate his work. He went to get one behind the No. 2 port winch and there is strong testimony, if it be believed, that as he walked by the winch he slipped on a "blob of grease" and fell, striking his back on part of the winch on the way down.

As a result of this fall, there is evidence that the appellant aggravated a previous back condition and sustained a bruised back, a bumped head, and had the wind knocked out of him.

There was no direct proof of how the grease got on the deck near the winch, but it might be inferred from the evidence that it came from lubrication of the winch or from a coiled wire fall which was on the deck between the winch and the deckhouse.

There is no question that there was evidence warranting a verdict for Yanow for it is now a long established law that a shipowner is liable to a stevedore loading its vessel if it be unseaworthy as to its decks by the presence thereon of sufficient oil or grease to make it slippery to one walking over it, and the stevedore is injured thereby. The liability exists although the shipowner has no knowledge of the presence of the

oil or grease. The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760; Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099; Boudoin v. Lykes Bros. S.S. Co., 348 U.S. 336, 340, 75 S.Ct. 382, 99 L.Ed. 354. Since Yanow was injured on the ship on navigable waters, his rights are determined by maritime and not state law. Pope and Talbot v. Hawn, 346 U.S. 406, 409, 74 S.Ct. 202, 98 L.Ed. 143.[1]

Yanow contends that two erroneous instructions given and a refusal to give a requested instruction so prejudiced his case with the jury that he is entitled to a new trial.

■ The first instruction complained of is obviously wrong since Yanow's contention was that unseaworthiness could create liability without "fault of anyone." It is:

"Just because an accident happened does not mean that, under the rules of law, there is any liability upon the Weyerhaeuser Steamship Company. In other words, the mere happening of an accident does not entitle the plaintiff to prevail in the absence of a breach of duty on the part of the defendant which caused or contributed to the injuries which plaintiff sustained. There are such things as unavoidable accidents —*accidents which happen without the fault of anyone*—and if you determine that such is the case here, *then your deliberations will be at an end,* and your verdict must be for the defendant even though the plaintiff was injured." (Emphasis added.)

After this instruction on unavoidable accident had been given to the jury, the attorneys repaired to the court's chambers where the following occurred:

"Mr. Peterson: Plaintiff excepts to the court's instruction to the jury, in substance, that if this was an unavoidable accident the plaintiff cannot recover. The point of my ·exception is that the unavoidable accident instruction in this kind of a situation is completely beside any issue in the case.

"The Court: Is that true? Do you think that unavoidable accident should be given?

"Mr. Lister: Well, your Honor, I think as a part of it that, technically, unavoidable accident would be the terminology, but I don't see the point you are making.

"The Court: I am just asking; and if you want to delete it, I will delete it.

"Mr. Lister: No.

"The Court: Very well."

Pertinent to this instruction are the facts that the trial occupied the whole day. The transcript shows that the case went to the jury late in the afternoon after 104 pages of testimony had been given and 20 exhibits introduced since the luncheon recess, 62 pages being of complicated opposing expert evidence by physicians describing the extent of Yanow's injuries, a matter relative to the amount of his damages. The wrongful opening instruction was followed by instruction covering the extent of 12 pages of the printed transcript.

In this situation the statement "then your deliberations will be at an end" gave an easy out for the jurors to escape from the possibility of being locked up for the night and the certainty of a long session over the evidence of damages, if they were forced to consider the evidence of the cause thereof.

With the insistence of the shipowner that the instruction must be given over the objection of Yanow, we hold that the effect of this instruction was not cured by other statements in the instructions.

Since the case may be retried and it is likely that the same questions may arise as to the plaintiff's refused instruction and the other instruction excepted to, they are here considered. The court gave the following instructions:

[1]. In the recent case of Kernan v. American Dredging Co., 78 S.Ct. 394, the court declined to pass on the contention that unseaworthiness causing the death of a seaman creates liability in the ship or owners, four of the dissenting judges stating that such unseaworthiness created no liability for death. Eight of the justices in the Boudoin case sat in the Kernan case. No mention is made of The Osceola, Sieracki and Boudoin cases recognizing such liability for personal injury of the seaman and stevedore. We do not regard the Kernan decision on the liability for death as affecting the Supreme Court cases recognizing the liability for personal injury from unseaworthiness.

"You have heard the testimony and the other evidence, and I leave it to you to determine whether plaintiff has proved by a preponderance of the evidence that oil and grease were permitted to collect on the deck forward of the port winch at No. 2 hatch and whether the quantity of oil and grease, if any that was permitted to collect rendered the vessel unseaworthy."

The Court refused appellant's requested instruction No. 6:

"Requested Instruction No. 6.

"In this case if you find that there was oil and grease collected on the deck forward of the port winch at Hatch No. 2, or that the topping lift wire for the port boom at Hatch No. 2 was not kept secured, then you will find the steamship SS W. H. Peabody unseaworthy. If you further find that plaintiff was injured as a proximate and contributing result of the unseaworthiness of the vessel, then your verdict will be in favor of the plaintiff and against the defendant corporation."

Counsel for appellant made his objections as follows:

"Plaintiff further excepts to the Court's failure to give Plaintiff's Requested Instruction No. 6, which is an instruction that if they find that there was oil and grease collected on the deck forward of the port winch at Hatch No. 2, and I have also put in there that if they find that the topping lift wire for the port boom at Hatch No. 2 was not kept secured, then they are to find the steamship SS W. H. Peabody unseaworthy.

"The plaintiff excepts to the Court's failure to instruct the jury either as to the grease and oil on the deck or the unsecured topping lift."

So far as concerns the topping lift wire the court properly stated that it was not shown to have contributed to the injury to Yanow. The sentence, "In this case if you find that there was oil and grease collected on the deck forward of the port winch at Hatch No. 2 * * * then you will find the Steamship SS W. H. Peabody unseaworthy" does not state the law since under this sentence any amount of grease however

slight would constitute unseaworthiness. The court's instruction quoted above is properly based on "the quantity of oil and grease."

The judgment is reversed.