**Emmett E. PAGE, Appellant,**

v.

**ST. LOUIS SOUTHWESTERN RAILWAY COMPANY, Appellee.**

No. 19756.

United States Court of Appeals
Fifth Circuit.

Jan. 3, 1963.

Rehearing Denied Jan. 30, 1963.

Ray G. Thurmond, Tyler, Tex., Russell M. Baker, Baker, Jordan, Shaw & Foreman, Dallas, Tex., for appellant.

Jack W. Flock, Galloway Calhoun, Jr., Tyler, Tex., Clyde W. Fiddes, Roy P. Cosper, Calhoun & Calhoun, Ramey, Brelsford, Hull & Flock, Tyler, Tex., of counsel, for appellee.

Before RIVES, JONES and BROWN, Circuit Judges.

RIVES, Circuit Judge.

This case, under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., arises from injuries received by the plaintiff, Page, on October 7, 1958, when he fell from a ladder at defendant's freight warehouse in Dallas, Texas. The plaintiff and one Epperson were employed by defendant as carpenters. They were instructed to replace a broken cable on an overhead door at defendant's freight warehouse. The door was stuck in the track over which it moved and lacked about two-thirds of the bottom panel being all the way up in the track. Each of the carpenters procured a step ladder. Epperson got up on top of the door and removed one end of the cable while plaintiff removed the bottom bracket on the door. Epperson threw the broken cable to the floor, fixed the new cable to the drum and threaded it down through a channel to plaintiff who fastened it to a bracket on the bottom of the door. Epperson then took the slack out of the cable, and the evidence is in dispute as to whether he also placed any tension on the spring of the drum attached to the shaft. There was evidence that the door must be down before the tension can be adjusted properly and that, with the door mostly up, only the slack should have been taken out of the cable and no tension put on the spring. When Epperson came down off the door he did not tell plaintiff that he had placed any tension on the spring and there was no reason for plaintiff so to suspect.

Both plaintiff and Epperson then tried unsuccessfully to move the door. Looking for the cause, they found that two top brackets on the door were bent. The plaintiff and Epperson removed one of the brackets and the roller, after which that side of the top panel of the door dropped down or sagged six to eight inches. At this point Epperson left the scene for the purpose of procuring new brackets and rollers. Paintiff moved his ladder to take off the opposite bracket.

He loosened the nuts and put a wrecking bar under the door on that side to hold it up while he removed the roller and bracket on that side. He had the bar in his left hand and was standing on the ladder when he removed the bracket and roller. The plaintiff testified:

"Q. And when you removed the bracket roller—the bracket and roller—what happened then?

"A. The door kick backwards. It kicked the bar out of my hand and knocked me and the ladder over.

"Q. Just describe—Tell the jury in your own way how that door kicked back. Was it hard or easy?

"A. Why, it just wammed back like a feller had hit you with a sledge hammer (indicating)."

Plaintiff further testified that he knew of nothing that would account for the door kicking back except tension on the spring.

In his amended complaint, plaintiff charged defendant with various acts of negligence; such as, failure to furnish plaintiff a reasonably safe place to work, reasonably safe tools and appliances with which to perform his work, failure to promulgate rules and regulations for the safe performance of the work, and negligence of his co-worker Epperson in adjusting and placing tension on the spring which activated the door, in failing to test the tension after tightening the spring, and in failing to warn plaintiff that he had placed or intended to place tension on the spring of the door.

Defendant answered, denying any negligence and charging plaintiff with various acts of contributory negligence and with adopting an unsafe method and procedure for repairing the door. Defendant pleaded also that the acts of negligence of the plaintiff were the sole proximate cause of his injuries, and in the alternative that plaintiff's injuries were the result of an unavoidable accident.

Defendant's theory was that the cause of plaintiff's injury was the panel falling down when the second bracket and roller

were removed, and that it was not a safe procedure to remove the second bracket and roller before replacing the first set.

The case was tried to a jury on the 15th, 16th and 17th of January, 1962, which returned a general verdict for the defendant upon which judgment was entered.

Upon appeal the plaintiff seeks a reversal upon four claimed errors, one in the admission of evidence, and the other three in the court's instructions to the jury. Since the instructions go to any right of plaintiff to recover, while the evidentiary question goes to the amount of damages, we consider first the claimed errors in the court's instructions to the jury.

### 1. Proximate Cause.

In its charge to the jury, the district court defined proximate cause as follows:

"The term 'proximate cause' as used in this charge has a definite legal meaning which may differ from your understanding of the meaning of that term as used in ordinary parlance.

"As used in this charge the term 'proximate cause' means that cause which in a natural and continuous sequence produced the event or happening in question and without which such event or happening would not have occurred; and the act or omission in question only becomes a proximate cause of an event or happening when such event or happening is the natural and probably (sic) consequence of such act or omission and is such a consequence as ought to have been foreseen by a person in the exercise of ordinary care in the light of attending circumstances. It need not be the sole cause, but it must be a concurring cause which contributed to the production of the result in question and but for which such result

or accident would not have occurred."

In a number of places in the charge which followed, the court instructed the jury that the burden was on the plaintiff to prove that the defendant was guilty of negligence in any one or more of the particulars alleged, and that such negligence was a proximate cause of the accident in question. The court overruled plaintiff's objection to the charge, stated as follows:

"The Plaintiff objects and excepts to the Court's charge and to those issues requiring the Plaintiff to show by a preponderance of the evidence that the negligent act of the Defendant was a proximate cause of his injuries; because under the Federal Employer's Liability Act the old concept of proximate cause has been done away with—and the only burden upon the Plaintiff is to show that the negligent act of the Defendant contributed to cause, in whole or in part, Plaintiff's injuries."

The plaintiff's objection to the charge is founded ultimately upon the language of the Act, which makes the defendant liable in damages " * * * for such injury * * * *resulting in whole or in part from the negligence* of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." 45 U.S.C.A. § 51. (Emphasis supplied.)

The italicized words, "resulting in whole or in part from the negligence," would seem sufficient to place beyond cavil or debate the proposition that the Act does not provide workmen's compensation, but that liability is based upon negligence having a causal connection with the injury, and both the Supreme Court and this Circuit are committed to that proposition.[1]

1. Inman v. Baltimore & Ohio R. Co., 1959, 361 U.S. 138, 80 S.Ct. 242, 4 L.Ed.2d 198; Simpson v. Texas & New Orleans R. Co., 5 Cir., 1962, 297 F.2d 660.

For many years the custom of the courts was to speak concerning the Act in terms of proximate causation.[2] The first significant departure from that custom came in a case where liability was based on a violation of the Federal Safety Appliance Act, not here involved. Coray v. Southern Pacific Co., 1949, 335 U.S. 520, 69 S.Ct. 275, 93 L.Ed. 208. The facts are succinctly stated in the opinion of the Supreme Court:

" * * * The decedent's death occurred when a one-man flat-top motor-driven track car crashed into the back end of an eighty-two-car freight train on a main-line track at a point near Lemay, Utah. Both train and motorcar were being operated in an eastward direction on railroad business. The train unexpectedly stopped just before the crash occurred because the air in its brake lines escaped, thereby locking the brakes. The air had escaped because of a violation of the Federal Safety Appliance Act in that the threads on a valve were so badly worn that a nut became disconnected. When the brakes locked, the motorcar was several hundred feet behind the freight train moving at about the same rate as the train, not an excessive rate under ordinary circumstances. The motorcar was equipped with brakes which had they been applied could have stopped the car within a distance of about one hundred feet. But the decedent who was in control of the car did not apply the brakes. Apparently he and another employee with him were looking backward toward a block signal and therefore did not know the train had stopped." 335 U.S. at 521, 69 S.Ct. at 276.

The state trial judge directed the jury to return a verdict for the defendant and the Utah Supreme Court affirmed. 112 Utah 166, 185 P.2d 963. The Supreme Court of the United States reversed, saying:

"The Utah Supreme Court reviewed the evidence here and held as a matter of law that the defective equipment did not proximately cause or contribute to the decedent's death. That court discussed distinctions between 'proximate cause' in the legal sense, deemed a sufficient cause to impose liability, and 'cause' in the 'philosophic sense,' deemed insufficient to impose liability. It considered the stopping of this train to have been a cause of decedent's death in the 'philosophic sense' in that the stopping created 'a condition upon which the negligence of plaintiffs' intestate operated,' one perhaps of many causes 'so insignificant that no ordinary mind would think of them as causes.' The court added, however, that the stopping 'was not the legal cause of the result,' thereby classifying it as not 'a substantial factor as well as actual factor in bringing about' the decedent's death. This conclusion was reached in part upon the reasoning that 'The leak in the triple valve caused the train to stop, because as a safety device, it was designed to do just that.'

"The language selected by Congress to fix liability in cases of this kind is simple and direct. Consideration of its meaning by the introduction of dialectical subtleties can serve no useful interpretative purpose. The statute declares that railroads shall be responsible for their employees' deaths 'resulting in whole·

2. Spokane & Inland Empire R. Co. v. Campbell, 1916, 241 U.S. 497, 510, 36 S.Ct. 683, 60 L.Ed. 1125; New York Central R. Co. v. Ambrose, 1930, 280 U.S. 486, 489, 490, 50 S.Ct. 198, 74 L.Ed. 562; Pennsylvania R. Co. v. Chamberlain, 1933, 288 U.S. 333, 339, 53 S.Ct. 391, 77 L.Ed. 819; Tiller v. Atlantic Coast Line R. Co., 1943, 318 U.S. 54, 67, 63 S.Ct. 444, 87 L.Ed. 610; Brady v. Southern Ry. Co., 1943, 320 U.S. 476, 483, 64 S.Ct. 232, 88 L.Ed. 239; Reynolds v. Atlantic Coast Line R. Co., 1949, 336 U.S. 207, 208, 69 S.Ct. 507, 93 L.Ed. 618.

or in part' from defective appliances such as were here maintained. 45 U.S.C. § 51. And to make its purpose crystal clear, Congress has also provided that 'no such employee * * * shall be held to have been guilty of contributory negligence in any case' where a violation of the Safety Appliance Act, such as the one here, 'contributed to the * * * death of such employee.' 45 U.S.C. § 53. Congress has thus for its own reasons imposed extraordinary safety obligations upon railroads and has commanded that if a breach of these obligations contributes in part to an employee's death, the railroad must pay damages. These air-brakes were defective; for this reason alone the train suddenly and unexpectedly stopped; a motor track car following at about the same rate of speed and operated by an employee looking in another direction crashed into the train; all of these circumstances were inseparably related to one another in time and space. The jury could have found that decedent's death resulted from any or all of the foregoing circumstances." 335 U.S. at 523, 524, 69 S.Ct. at 277.

The definite departure from traditional common-law tests of proximate causation as applied to the Federal Employers' Liability Act came in Rogers v. Missouri Pacific R. Co., 1957, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493. There, the injured employee had been engaged in burning weeds and vegetation on and near the railroad tracks. Noting the approach of a train, he complied with the company's instructions by ceasing work and going to a point near a culvert off the tracks and ties to observe the journals of the passing train for hotboxes. He fell from the top of the culvert in attempting to avoid flames from the burning vegetation and weeds when the flames were fanned by the passing train. The Missouri Supreme Court, 284 S.W.2d 467, found that the emergency confronting the plaintiff "was an emergency brought about by himself," and that plaintiff's conduct was the sole cause of his mishap. The Supreme Court reversed and spoke as follows on the question of causation:

"The opinion may also be read as basing the reversal on another ground namely, that it appeared to the court that the petitioner's conduct was at least as probable a cause for his mishap as any negligence of the respondent, and that in such case there was no case for the jury. But that would mean that there is no jury question in actions under this statute, although the employee's proofs support with reason a verdict in his favor, unless the judge can say that the jury may exclude the idea that his injury was due to causes with which the defendant was not connected, or, stated another way, unless his proofs are so strong that the jury, on grounds of probability, may exclude a conclusion favorable to the defendant. That is not the governing principle defining the proof which requires a submission to the jury in these cases. The Missouri court's opinion implies its view that this is the governing standard by saying that the proofs must show that 'the injury would not have occurred but for the negligence' of his employer, and that '[t]he test of whether there is causal connection is that, absent the negligent act the injury would not have occurred.' That is language of proximate causation which makes a jury question dependent upon whether the jury may find that the defendant's negligence was the sole, efficient, producing cause of injury.

"Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with rea-

son, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities. The statute expressly imposes liability upon the employer to pay damages for injury or death due 'in whole or *in part*' to its negligence. (Emphasis added.)

"The law was enacted because the Congress was dissatisfied with the common-law duty of the master to his servant. The statute supplants that duty with the far more drastic duty of paying damages for injury or death at work due in whole or in part to the employer's negligence. The employer is stripped of his common-law defenses and for practical purposes the inquiry in these cases today rarely presents more than the single question whether negligence of the employer played any part, however small, in the injury or death which is the subject of the suit. The burden of the employee is met, and the obligation of the employer to pay damages arises, when there is proof, even though entirely circumstantial, from which the jury may with reason make that inference.

"The Congress when adopting the law was particularly concerned that the issues whether there was employer fault and whether that fault played any part in the injury or death of the employee should be decided by the jury whenever fairminded men could reach these conclusions on the evidence. Originally, judicial administration of the 1908 Act substantially limited the cases in which employees were allowed a jury determination. That was because the courts developed concepts of assumption of risk and of the coverage of the law, which defeated employee claims as a matter of law. Congress corrected this by the 1939 amendments and removed the fetters which hobbled the full play of the basic congressional intention to leave to the fact-finding function of the jury the decision of the primary question raised in these cases—whether employer fault played any part in the employee's mishap." 352 U.S. 505, 506, 507, 508, 509, 77 S.Ct. 448.

Since that case, the Supreme Court has repeatedly reiterated, approved, and applied the test there developed, viz.: "Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." 352 U.S. at 506, 77 S.Ct. at 448.[3]

The Supreme Court, in the cases which have been cited, passed more upon the sufficiency of evidence of causal connection to require submission of the issue to a jury than upon the propriety of particular instructions as to proximate cause. Some charges on proximate causation were, however, incidentally disapproved, as appear from the quotations from the Coray and the Rogers cases, supra. The Supreme Court cases would seem to establish the proposition that in determining whether a jury question is presented

---

**3.** See Webb v. Illinois Central R. Co., 1957, 352 U.S. 512, 516, 77 S.Ct. 451, 1 L.Ed.2d 503; Ferguson v. Moore-McCormack Lines, 1957, 352 U.S. 521, 523, 77 S.Ct. 457, 1 L.Ed.2d 511; Moore v. Terminal Railroad Association, 1958, 358 U.S. 31, 79 S.Ct. 2, 3 L.Ed.2d 24 and cases there collected; Inman v. Baltimore & Ohio R. Co., 1959, 361 U.S. 138, 140, 80 S.Ct. 242, 4 L.Ed.2d 198; Harris v. Pennsylvania R. Co., 1959, 361 U.S. 15, 80 S.Ct. 22, 4 L.Ed.2d 1.

the court should confine itself "to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death." 352 U.S. 507, 77 S.Ct. 449. By necessary implication, it would seem to follow that, if the jury does so conclude, it would find that the injury or death resulted "in whole or in part from the negligence" of the employer within the language of the statute, 45 U.S.C.A. § 51. The Second Circuit in a recent opinion [4] has held the district court in error for refusing to charge the jury in substantially the language of the Rogers opinion, saying:

"* * * Plaintiff requested the court to charge that if the employer's negligence 'played any part, even the slightest, in producing an injury to plaintiff, the plaintiff may recover. * * *' The Court, however, gave the traditional common law instruction that 'Proximate cause is that cause which in the natural and continuous sequence, unbroken by any efficient intervening cause, produces the result complained of, and without which it would not have occurred.' Since the language of the requested charge was taken directly from Rogers v. Missouri Pac. R. Co., 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957),[3]

[3] "The standard of liability under the Jones Act is governed by the substantive provisions of the Federal Employers' Liability Act. 46 U.S.C.A. § 688. See Ferguson v. Moore-McCormack Lines, Inc., 352 U.S. 521, 523, 77 S.Ct. 459, 1 L.Ed.2d 515 (1957).[5]

a decision which reflects the Supreme Court's view that the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. and the Jones Act are departures from traditional com-

4. DeLima v. Trinidad Corporation, 2 Cir., 1962, 302 F.2d 585, 587, 588.

5. Judge Mathes in his "Jury Instructions and Forms for Federal Civil Cases" suggests the following for use in Federal Employers' Liability cases:
"An injury is proximately caused by an act or omission whenever it appears that the act or omission played any part,

mon law principles, we believe the requested charge should have been given. See also Ferguson v. Moore-McCormack Lines, Inc., 352 U.S. 521, 523, 77 S.Ct. 459, 1 L.Ed.2d 515 (1957)."

On the other hand, the Ninth Circuit held that the district court properly refused to give a proposed instruction which paraphrased in part the language of the Rogers opinion, saying:

"* * * The court in that case, however, was not speaking of 'the test of liability of the railroad carrier' (the language used in the proposed instruction) but 'the test of a jury case.' If the proofs justify with reason the conclusion that employer negligence played any part, 'even the slightest,' in producing the injury or death, then the issue of causal relation must go to the jury. The Supreme Court was here using the word 'proofs' to mean 'evidence.' But the fact that the proofs or evidence justify with reason a finding of causal relation does not mean that the jury is required to make such a finding.

"The proposed instruction is faulty because it bound the jury to find what it was entitled to find but was not required to find. * * *" Bertrand v. Southern Pacific Company, 9 Cir., 1960, 282 F.2d 569, 573.

It seems to us that there is no real conflict between the decisions of the two Circuits. In the Second Circuit case, the instruction was "if the employer's negligence 'played any part, even the slightest, in producing an injury * * *,'" thus requiring the jury so to conclude; while in the Ninth Circuit case the instruction was "* * * whether the proofs *justify*

no matter how small, in actually bringing about or causing the injury. So if you find from the evidence that any negligence on the part of the defendant contributed in any way or manner toward any injury suffered by plaintiff, you may find that injury was proximately caused by defendant's act or omission." 28 F.R.D. 497.

*with reason* the conclusion that the employer's negligence \* \* \* played any part \* \* \*." 282 F.2d 572, n. 3. (Emphasis supplied.)

 This case does not call for any wholesale condemnation of the use of language of proximate causation in cases under this Act. Our holding is confined to the instructions and the facts of this particular case. Under the definition of proximate cause in this case, the jury was required to find, before the plaintiff could prevail, that the cause of his injury was one which in natural and continuous sequence produced the event or happening in question and without which such event or happening would not have occurred. A detailed consideration of those requirements [6] would seem to indicate that they are not essential to the jury's conclusion in this case that employer negligence played a part in producing the plaintiff's injury. The same thing would appear to be true of the requirement that the accident be the natural and probable consequence of defendant's act or omission and such a consequence as ought to have been foreseen by a person in the exercise of ordinary care in the light of attending circumstances.[7] Those requirements may well have been injurious to the plaintiff. They are foreign to the simple test prescribed in Rogers, supra. Under that decision, and the long line of Supreme Court cases which have followed it, we must hold that the court's instructions on proximate causation were erroneous in operating to unduly restrict the jury in the exercise of its functions.

### 2. *Contributory Negligence as Sole Cause.*

The court charged the jury as follows: "And while the burden is on the Defendant to establish that the Plaintiff was guilty of negligence in any one or more particulars, once the Defendant has established to your satisfaction by a preponderance of the evidence that the Plaintiff was guilty of negligence in any one or more particulars, the burden is on the Plaintiff to then establish by a preponderance of the evidence that such negligence, if any, on the part of the Plaintiff was not the sole proximate cause of the accident in question."

The plaintiff objected to this charge on the ground that it erroneously placed the burden of proof on the plaintiff. The court overruled the objection.

 It is, of course, established under the Federal Employers' Liability Act that the burden of proving contributory negligence is on the defendant.[8] That burden includes proof both of the contributorily negligent act or omission and of the causal effect of that act or omission on the accident and injury, just as the plaintiff's burden includes the questions both of the carrier's negligence and of the causal effect of that negligence on the injury.[9]

 Under the Act,[10] contributory negligence does not bar a recovery but diminishes the damages in proportion to the amount of negligence attributable to the employee. The defendant unquestionably has the burden when the negligence attributable to the plaintiff amounts to anything less than 100% of the total, and we can see no reason why, under an affirmative plea that the plaintiff's negligence was the sole cause of the accident, the defendant should not have the burden of proving that causal effect. As aptly stated by Judge Swan for the Second Circuit: "If the defend-

---

6. See Rogers case, supra, 352 U.S. at 506, 77 S.Ct. 448; Prosser on Torts, 2d ed., p. 255; 2 Restatement Torts, Sec. 432(2) and comment on pp. 1164, 1165.

7. See the criticism of such a requirement in Prosser on Torts, 2d ed., pp. 258–262. Compare contra, Reynolds v. Atlantic Coast Line R. Co., 5 Cir., 1952, 196 F.2d 643, 646.

8. Central Vermont Ry. Co. v. White, 1915, 238 U.S. 507, 512, 35 S.Ct. 865, 59 L.Ed. 1433.

9. Tiller v. Atlantic Coast Line R. Co., 1943, 318 U.S. 54, 67, 63 S.Ct. 444, 87 L.Ed. 610.

10. 45 U.S.C.A. § 53.

ant must prove the partial defense, no reason is apparent why it should not also have the burden of proving the complete defense." Kierce v. Central Vermont Ry., 2 Cir., 1935, 79 F.2d 198, 202.

It was probably not necessary to plead affirmatively that plaintiff was guilty of negligence which alone caused the injury, for proof to that effect might have been offered under the general denial of negligence on the part of defendant.[11] If the defendant had chosen to rest on its general denial, the burden would have remained on the plaintiff to prove that his injury resulted in whole or in part from the defendant's negligence.

The writer regrets that the district court may have been misled by a statement of the writer in his opinion for this Court in Texas & Pacific Railway Co. v. Buckles, 5 Cir., 1956, 232 F.2d 257, 264:

> " * * * Further, there must be evidence, either from the accident itself or from other testimony, reasonably pointing to the defendant as the one responsible for the negligence. In a case under the Federal Employers' Liability Act, the evidence must reasonably negative that the plaintiff's own negligence was the sole proximate cause of the accident, though it need not so negative ordinary contributory negligence on the part of the plaintiff since that goes only in diminution of damages, and the plaintiff may recover if his injury resulted 'in whole or in part' from the negligence of the defendant. 45 U.S.C.A. §§ 51, 53."

That statement was, we think, correct as applied to the doctrine of res ipsa loquitur then under discussion, but was not intended to convey the thought that once the defendant has proved plaintiff guilty of negligence, the burden is on plaintiff to prove that his negligence was not the sole proximate cause of the accident.

11. Palum v. Lehigh Valley R. Co., E.D. N.Y., 1946, 65 F.Supp. 1010, aff'd 2d Cir., 1948, 165 F.2d 3.

12. See Tiller v. Atlantic Coast Line R. Co., 1943, 318 U.S. 54, 67, 63 S.Ct. 444, 87 L.Ed. 610.

We conclude that if such an instruction in the present case was not positively erroneous, it was at the very least prejudicially misleading.

*3. Charge on Unavoidable Accident.*

The court charged the jury:

"Now, the Defendant, having alleged and charged that the accident in question was an unavoidable accident—the burden is on the Plaintiff to establish by a preponderance of the evidence that such accident was not an unavoidable accident.

"By the term 'unavoidable accident,' as used in this charge, means an event or occurrence which occurs without being proximately caused by either the negligence of the Defendant or the negligence of the Plaintiff."

The plaintiff objected as follows:

"Plaintiff excepts and objects to the Court's charge on unavoidable accident; because there is absolutely no theory under the evidence in this case as to how the accident or injury in question could have been caused other than by the negligence of the Plaintiff or by the Defendant."

Plaintiff's objection was overruled.

 We would agree that ordinarily in a case under this Act a charge on unavoidable accident is confusing and tends to distract the jury's attention from the simple issues of whether the carrier was negligent and whether that negligence was the cause, in whole or in part, of the plaintiff's injury.[12] The charge may also have misplaced the burden of proof.

 However, under Rule 51, Federal Rules of Civil Procedure, the plaintiff must be confined to the ground assigned for his objection to the charge;[13] namely, that there was no evidence to support

13. Palmer v. Hoffman, 1943, 318 U.S. 109, 119, 63 S.Ct. 477, 87 L.Ed. 645.

the issue of unavoidable accident. We think that there was evidence from which the jury could find that the accident was "unavoidable" within the meaning of the charge. Indeed, the plaintiff's written report to the defendant dated seventeen days after the accident said: "Mr. Epperson did not have anything to do with me getting hurt, it was just an accident just one of those things to happen." There was no reversible error in overruling the plaintiff's objection to this charge.

### 4. Admission of Evidence of Retirement Benefits.

Plaintiff filed a Motion in Limine, seeking to prevent defendant from bringing before the jury the fact that plaintiff, since about October 7, 1959, one year after the accident, had been drawing the sum of $160.00 per month as a pension under the Railroad Retirement Act. This motion was denied and defendant was permitted, over plaintiff's objection, to develop evidence of that matter on cross-examination of plaintiff.

The court charged the jury to consider this fact only in determining whether or not plaintiff would have gone on working had he not been injured, and instructed the jury that if they found the plaintiff would have retired from the services of defendant when he did, irrespective of the injuries received in the accident, they should not allow plaintiff any damage for lost earnings or earning capacity, after the date of his retirement from the services of defendant, as such loss of earnings under those circumstances after the date of retirement would not be loss of earnings resulting from the injuries plaintiff received as a result of the accident; but further instructed the jury that should they determine that plaintiff retired when he did because of the injuries he received, then they should disregard the facts that he retired and was drawing retirement pay and not consider such facts for any purpose whatsoever in mitigation of the damages, if any, plaintiff had sustained. Plaintiff preserved his objection to this charge.

The plaintiff's injury occurred on the day before he was sixty-nine years of age. That was four years past his permissible retirement age. His income at work had been approximately $360.00 per month. His pension came to $162.80 per month. The defendant contended that plaintiff received a simple fracture in the accident and that the fracture had completely healed, causing no disability; that any inability of the plaintiff to work was due not to his injury but to his age and other factors.

We held in A. H. Bull Steamship Co. v. Ligon, 5 Cir., 1960, 285 F.2d 936, 937, that, "It is well settled that there will not be any reduction of an award of damages for personal injuries by reason of payments made to an injured party from a collateral source independent of the wrongdoer."

The evidence of retirement and retirement benefits in the present case was solely for the purpose of permitting the jury to determine whether plaintiff retired because of his injuries or because of his age or other factors disassociated from the accident. Under the circumstances of the Bull case, supra, we held that the district court did not err in *excluding* similar evidence offered upon a like theory. At the same time, we recognized that "there may be cases where evidence of this kind should be admitted." 285 F.2d 938. Much must be left to the discretion of the trial court in the light of the facts and circumstances of the particular case. See Simmons v. Union Terminal Co., 5 Cir., 1961, 290 F.2d 453, 455.

In the present case, the evidence was logically relevant, it was admitted on cross-examination of the plaintiff after he had testified that he was not working because of disability resulting from the accident. The defendant claimed that the plaintiff was malingering. Under the circumstances of the present case, the district court did not abuse its discretion, or commit reversible error, in admitting the evidence of retirement and retirement benefits for the limited purposes clearly stated by the court.

For the errors stated in the foregoing opinion, the judgment is reversed and the cause remanded.

Reversed and remanded.