Lonnie W. LOWRY, Sr., Appellant,

v.

A/S D/S SVENDBORG and D/S af 1912 A/S

v.

UNIVERSAL TERMINAL & STEVE-DORING CORPORATION (Third-Party Defendant.)

No. 16804.

United States Court of Appeals Third Circuit.

Argued April 15, 1968.

Decided June 24, 1968.

Wilfred F. Lorry, Freedman, Borowsky & Lorry, Philadelphia, Pa., for appellant.

John T. Biezup, Rawle & Henderson, Philadelphia, Pa. (William E. Rapp, Philadelphia, Pa. on the brief), for appellee Svendborg.

Francis E. Marshall, Marshall, Dennehey & Warner, Philadelphia, Pa., for appellee, Universal, etc.

## OPINION OF THE COURT

Before McLAUGHLIN, FREEDMAN and SEITZ, Circuit Judges.

SEITZ, Circuit Judge.

Plaintiff, longshoreman, sued the defendant-shipowner for injuries sustained while loading its ship.[1] His claim was based on unseaworthiness and negligence. The case was tried to a jury which was given seven special interrogatories. The jury answered interrogatories 1 and 2 by finding no unseaworthiness and no negligence on defendant's part. It therefore did not reach the other issues presented. Accordingly, the district court entered judgment for the defendant. Plaintiff appeals.

The first error asserted by plaintiff relates to certain court instructions given to the jury with respect to interrogatory 2. That interrogatory reads: "Was there any negligence on the part of the defendant shipowner on November 5, 1962, acting through its agents, officers and employees, which was a substantial factor in causing the injuries to plaintiff, Lonnie W. Lowry, Sr.?"

In the trial court the plaintiff's counsel contended repeatedly that there was no evidence upon which an issue of contributory negligence could be submitted to the jury. When he raised the issue once again on a motion for a new trial, the district court, 284 F.Supp. 640, disposed of it in the following answer:

"Because it has been determined that plaintiff could have suffered no prejudice from the challenged instructions, it is unnecessary to rule on the sufficiency of the evidence of contributory negligence."

In view of the district court's approach, consideration must be given to plaintiff's contention, made below, that the jury was given an erroneous instruction of material importance regarding interrogatory 2. That interrogatory required the jury to determine whether or not defendant's negligence was a substantial factor in causing plaintiff's injuries. The court instructed the jury that "* * * if you found that the sole negligence was that of the plaintiff, then you would answer this question [interrogatory 2] 'no.'" Though the interrogatory was not directed to plaintiff's negligence, because of the use of "sole," the charge was not erroneous as a matter of logic. Obviously if plaintiff's negligence was the sole cause of his injury, the negligence of the defendant, if any, could not have been a cause thereof. This was really the rationale of Donovan v. Esso Shipping Co., 259 F.2d 65 (3rd Cir.), cert. denied, 359 U.S. 907, 79 S.Ct. 583, 3 L.Ed.2d 572 (1958). Thus, had the court stopped at that point no cognizable harm would have been done. But the court later in the charge repeated the substance of the quoted language and, unfortunately, added:

"* * * Obviously, if you find that the plaintiff was careless, that he swung his leg over there too fast, and that caused him to fall, that because all these people went down without incident, and because you accept Mr. Keeler's testimony as to the impossibility of his own story of how it happened, and so on, then there would be no fault on the part of the shipowner."[2]

Having in mind that interrogatory 2 required the jury to determine whether defendant was negligent, the jury is told by the court that a finding

---

1. While not in issue on this appeal, the defendant did file a third party complaint against the stevedoring company by whom plaintiff was employed.

2. After plaintiff's counsel objected to the words "too fast," the court recalled the jury and instructed them that they should be governed by their own recollection and that he didn't "recollect any direct evidence of that."

as to negligence on plaintiff's part—not sole negligence—required a "no" answer to the interrogatory. The language after the word "Obviously" took from the jury any issue as to comparative negligence. Since it is not challenged that the evidence presented a jury issue as to defendant's negligence, the portion of the charge in question might well have caused the jury to think that a negative answer to the interrogatory was required regardless of any negligence on defendant's part. Indeed, the jury's possible confusion could have been compounded by the fact that such instruction concerning the effect of plaintiff's negligence was given in connection with an interrogatory directed solely to the issue of defendant's negligence.

██ The district court states that "Properly read" the instructions suggest a finding in defendant's favor if the jury should find that the accident was not caused by any negligence on its part. Recognizing that a charge must be read as a whole, it nevertheless appears that the jury could well have understood that a finding of negligence on plaintiff's part precluded a finding of any negligence by defendant. Since this, of course, is not the law and since it was a material issue in the case, a new trial is in order.

Since there must be a new trial, it would seem desirable to consider plaintiff's contention that the evidence did not justify the submission of an issue of contributory negligence to the jury. A bit of factual background is in order.

On the morning of the accident, November 5, 1962, plaintiff began to descend into the lower hold of defendant's ship. To do this he had to climb over the coaming at the after end of the hatch. He then had to get his feet into the foothold on the inside of the coaming. He could then proceed down the ladder. On the outside of the coaming there were two blocks and a group of guy wires which descended in the shape of a truncated "V". These lines were secured on the outside of the coaming at the place where the longshoreman had to climb over the coaming to start down the ladder. The plaintiff was the third man in the gang to go down on the morning of the accident. He testified that he inserted his right foot in the top foothold on the inside of the coaming. He then grasped the top of the coaming with both hands and started to swing his left leg over. As he was doing this, his left foot struck the group of guy wires on his left causing him to lose his balance and fall into the hold. There were no eye-witnesses.

We now consider the possible evidence of plaintiff's negligence:

1. Two larger men preceded plaintiff down the ladder without incident and an eight-man gang went up and down twice that day without incident. It is not apparent how this evidence would create a jury issue as to plaintiff's negligence. It would certainly require speculation to convert it into affirmative evidence that plaintiff must therefore have been negligent in some way.

2. The plaintiff had been out of work for about two weeks in October because of a chest cold and had worked only ten hours the week before the accident. There was no evidence of plaintiff's possible weakened condition on the day of the accident. Indeed, we cannot even tell from the record whether he was ill at all during the week prior to the accident. All we know is that he worked ten hours that week. This evidence lacked probative value.

3. Plaintiff had a cloth bag containing clothing strapped over his shoulders. He testified that his hands were free. There is not a shred of evidence indicating that the bag contributed to the accident.

4. Defendant's expert testified that plaintiff would not have fallen into the hold had the accident happened as plaintiff described it. Assuming that the expert made an accurate assumption concerning the testimony, it is not apparent how his testmony constituted affirma-

tive evidence of plaintiff's possible negligence.

5. Plaintiff testified that he "spun" or "swung" his left leg around in going over the top. The uncontradicted evidence was that this really was the normal way to get over the coaming.

It thus appears that the evidence relied upon by defendant, whether viewed separately or cumulatively, lacked the probative quality to create a jury issue as to plaintiff's negligence. If then, on a new trial, the evidence is of the same quality, the issue of contributory negligence should not be submitted to the jury.

The plaintiff next contends, as he did below, that it was error for the district court, in instructing the jury concerning the doctrine of unseaworthiness, to tell them that they might find that plaintiff suffered his injuries as a result of an unavoidable accident.[3] The concept of "unavoidable accident" implies the need to find "fault" as a prerequisite to liability. Compare Yanow v. Weyerhaeuser Steamship Co., 250 F.2d 74 (9th Cir.), cert. denied, 356 U.S. 937, 78 S.Ct. 779, 2 L.Ed.2d 812 (1958). It is therefore at war with the absolute warranty of seaworthiness. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S. Ct. 926, 4 L.Ed.2d 941 (1960).

The defendant argues most vigorously that it was not error for the trial court to charge, as it did, that defendant did not have the duty to furnish an accident-free vessel. But plaintiff does not so contend. Plaintiff is complaining about the instruction concerning "unavoidable accident" not "accident-free vessel." The two concepts are significantly different, the former implying absence of fault generally and the latter relating to the extent of the shipowner's duty. In the present context the first was objectionable, the second was not.

It follows that it was error to give this instruction at least with respect to the issue of unseaworthiness posed by interrogatory 1.

Plaintiff also claims error in the district court's refusal to permit him to introduce testimony to rebut defendant's evidence as to the condition on the deck adjacent to the ladder. A review of the record shows real confusion in the development of this issue by the parties. Since there is to be a retrial, it seems preferable to permit this matter to be developed in orderly fashion. The trial judge can then decide whether the evidence is relevant to any issues properly in the case.

The judgment of the district court will be reversed and the matter remanded for a new trial.

---

3. "You understand that there can be unavoidable accidents. That happens."