Samuel F. JOHNSON,
Plaintiff-Appellant,

v.

Norwood BRYANT, an individual, et al., Defendants,

Master Norwood Inc., et al.,
Defendant-Appellee.

No. 80–7434.

United States Court of Appeals,
Eleventh Circuit.

March 1, 1982.

Diamond, Lattof, Gardner, Pate & Peters, Ross Diamond, III, Mobile, Ala., for plaintiff-appellant.

G. Hamp Uzzelle, III, J. Hodge Alves, III, Mobile, Ala., for defendant-appellee.

Before TUTTLE, HENDERSON and HATCHETT, Circuit Judges.

HENDERSON, Circuit Judge:

In this appeal, Samuel F. Johnson challenges a jury verdict for the defendant in his personal injury action for negligence under the Jones Act, 46 U.S.C. § 688, and unseaworthiness under general maritime law. He assigns as error the district court's denial of his motions for summary judgment, directed verdict and judgment notwithstanding the verdict for the reason that the vessel was unseaworthy and its captain negligent as a matter of law. He also contends that the trial judge incorrectly charged the jury. Finding that the court erred in instructing the jury on unseaworthiness, we reverse and remand for a new trial on that count.

The appellant was injured by a falling net while working as a deckhand aboard the M/V MASTER NORWOOD, captained by his son. At the time of the injury, the MASTER NORWOOD was in the Gulf of Mexico in the middle of a month-long fishing voyage. The crew was bringing in the nets aboard the vessel so that she could be taken to sheltered waters in nearby Louisiana to ride out an approaching "norther," which had produced 10 to 12 foot seas, 40 to 50 knot winds, and rain.

The nets were hoisted aboard the vessel by means of a whipline, a rope approximately one and one-quarter inches in diameter. The whipline ran through an overhead block and forward through another block to a "gypsy head" winch, which provided power for lifting the nets. The captain "tailed" the winch, tightening the whipline to raise the nets and slacking it to lower them to the deck. The whipline was first tied to the loaded "sack" of the net, which was lifted out of the water, brought over the stern, and lowered to the deck. The main body or middle of the net was then brought aboard in the same manner.

Earlier in the same voyage the captain had noticed a worn section in the whipline, caused by rubbing on the winch drum. There was no spare whipline, so he cut out the worn section and spliced the line back together. It is undisputed that the splice was good and tight. Because the spliced portion was thicker than the whipline itself, it could not be wrapped around the winch drum, so the ends of the line were switched. The splice thereafter ran through the overhead stern block. During operations prior to the plaintiff's injury, it stuck in the block because of its size, but the weight of the loaded nets usually permitted the splice to pass through without incident. The winch itself operated properly at all times.

The plaintiff's injury occurred as he was assisting in bringing the main body of one of the nets to a landing on the stern deck. The loaded sack had already been decked, and the main body lifted out of the water and brought overhead. The plaintiff's task was to take hold of the net and guide it gently to the deck in order to prevent damage to the rollers and floats. The captain was handling the other end of the whipline and had control of the height of the net. As he lowered the net, the splice caught in the block, as it had on prior occasions. The captain raised the net slightly and then slacked the whipline in an attempt to force the splice through the block. He lost control of the net, which fell upon the plaintiff.

The precise cause of the net's fall is not clear from the evidence. The captain testified that the vessel was rocking in heavy seas and that rain tended to cause the line to slip. Both he and the appellant observed that a turn of the whipline probably jumped off the winch drum, and that he was unable to catch it. The plaintiff says simply that "[w]henever he pulled the line down ... it slipped on him," causing the

net to fall. He conceded, however, that the captain was not negligent, and that he was manning the winch in "the onliest way you could operate a winch."

The webbing of the net caused a laceration of the appellant's left ear. The injury was treated with bandages and medication available aboard the vessel. The appellant asserts that a staph infection further caused spinal abscess resulting in permanent disability.

■ The denial of a motion for summary judgment will be reversed only for an abuse of discretion. *National Screen Service Corp. v. Poster Exchange,* 305 F.2d 647, 651 (5th Cir. 1962); see *Marcus v. St. Paul Fire & Marine Ins. Co.,* 651 F.2d 379, 382 (5th Cir. Unit B 1981). The district court did not abuse its discretion here.

■ The standards for denial of motions for a directed verdict and for judgment notwithstanding the verdict are the same. *Ellis v. Chevron U.S.A., Inc.,* 650 F.2d 94, 96–97 (5th Cir. Unit A 1981). Considering all the evidence in the light and with reasonable inferences most favorable to the opposing party,

> [i]f the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.

*Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir. 1969) (en banc).

■ In a Jones Act case, such a motion should be granted only where there is a complete absence of probative fact to support a verdict of negligence for the plaintiff. *See Lavender v. Kurn,* 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916 (1946). Whether the same rule prevails for a motion by a plaintiff is not clear, see *Allen v. Seacoast Products, Inc.,* 623 F.2d 355, 360 (5th Cir. 1980), but we have applied the *Boeing* rule

without addressing that issue where there is substantial evidence opposing the motion. *E.g., Bobb v. Modern Products, Inc.,* 648 F.2d 1051 (5th Cir. Unit B 1981).

■ On the facts presented here, there was substantial evidence in opposition to the appellant's motions for a directed verdict and judgment n.o.v. on liability under the Jones Act. The appellant unequivocally admitted that the captain did not negligently handle the whipline. There was independent evidence that the loss of a turn on the winch drum was caused not by negligence, but by the rain and rocking of the vessel.

[5] We similarly conclude that there was sufficient evidence to support a finding that the spliced whipline was seaworthy. The question of unseaworthiness is ordinarily one for the jury, *Morales v. City of Galveston,* 291 F.2d 97 (5th Cir. 1961), aff'd, 370 U.S. 165, 82 S.Ct. 1226, 8 L.Ed.2d 412 (1962), and only in a rare case can a vessel be unseaworthy as a matter of law, *Jefferson v. Taiyo Katun, K. K.,* 310 F.2d 582 (5th Cir. 1962). The appellant contends that the facts of this case establish unseaworthiness as a matter of law, citing *Marshall v. Ove Skou Rederi, A/S,* 378 F.2d 193 (5th Cir. 1967), and *Gibbs v. Kiesel,* 382 F.2d 917 (5th Cir. 1967).

■ The warranty of seaworthiness is, as the appellant contends, an absolute duty, but it does not obligate the owner to furnish an accident-free vessel. *Mitchell v. Trawler Racer, Inc.,* 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941, 948–49 (1960). The question is one of reasonable fitness for the intended use of the vessel and her appliances. *Id.,* 362 U.S. at 550, 80 S.Ct. at 933, 4 L.Ed.2d at 948–49; *Little v. Green,* 428 F.2d 1061, 1065 (5th Cir. 1970), *cert. denied,* 400 U.S. 964, 91 S.Ct. 366, 27 L.Ed.2d 384 (1970). We noted in *Haughton v. Blackships, Inc.,* 462 F.2d 788 (5th Cir. 1972), "that 'a seaman is not absolutely entitled to a deck that is not slippery. He is absolutely entitled to a deck that is not unreasonably slippery.'" 462 F.2d at 789 (quoting *Colon v. Trinidad Corp.,* 188 F.Supp. 97, 100 (S.D. N.Y.1960)). Similarly, a seaman is not absolutely entitled to a spliced whipline that does not stick when passing through a

**1280**

block. He is absolutely entitled only to a spliced whipline which does not cause an unreasonable departure from normal operating conditions by sticking in the block. As we noted in *Marshall*, "[t]he hazard may not be sufficiently great that the departure from conditions of absolute safety is enough to impose liability." 378 F.2d at 201–02; see *Rivers v. Angf. A/B Tirfing*, 450 F.2d 12 (5th Cir. 1971). The extraordinary conditions present in *Marshall* are absent in this case, and the evidence concerning the use and operation of the spliced whipline raised a jury question on the issue of unseaworthiness. See *Atlantic & Gulf Stevedores v. Ellerman Lines, Ltd.*, 369 U.S. 355, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962).[1]

■ Of the several exceptions to the district court's charge to the jury, Johnson first complains that the warranty of seaworthiness was diluted by overemphasizing the "reasonable fitness" aspect of the vessel. In assessing the jury instructions, consideration must be given to the charge as a whole so as to determine whether it is misleading or incorrectly states the law to the prejudice of the objecting party. *E.g., Hlodan v. Ohio Barge Line, Inc.*, 611 F.2d 71 (5th Cir. 1980). When the instructions, taken together, properly express the law applicable to the case, there is no error even though an isolated clause may be inaccurate, ambiguous, incomplete or otherwise subject to criticism. *Vicksburg Furn. Mfg., Ltd. v. Aetna Cas. & Sur. Co.*, 625 F.2d 1167, 1169 (5th Cir. Unit A 1980). An erroneous instruction is not otherwise reversible unless the court is "left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1372 (5th Cir. 1981). The district judge's instructions on unseaworthiness properly balanced the absolute nature of the warranty with the requirement that vessel and gear need only be "reasonably fit." See *Lacaze v. Olendorff*,

526 F.2d 1213 (5th Cir. 1976); *Marshall v. Ove Skou Rederi A/S*, 378 F.2d at 197 n. 6. No undue emphasis was placed on the reasonableness feature which would dilute the warranty, as occurred in *Ballwanz v. Isthmian Lines, Inc.*, 319 F.2d 457 (4th Cir. 1963), cert. denied, 376 U.S. 970, 84 S.Ct. 1136, 12 L.Ed.2d 84 (1964).

■ The appellant further objects to two instructions on unseaworthiness given at the request of the appellee. Defendant's Instruction No. 4 stated, in part:

The standard is not perfection, but reasonable fitness, not a shrimp boat that will weather every storm or withstand every imaginable peril of the sea, but a shrimp boat reasonably suited for her intended service of catching shrimp.

Defendant's Instruction No. 5 stated, in part:

The test to be applied by the jury in determining whether the vessel was seaworthy at the time of the plaintiff's alleged accident is whether or not the vessel was reasonably fit for her intended purpose as a shrimp boat.

Following each of these instructions, this court added:

The Court further charges the jury that, if you find from the evidence in this case that, at the time and place complained of in the plaintiff's complaint the M/V MASTER NORWOOD and her gear, including whip lines, were reasonably fit for their intended purpose, then you may not return verdict in favor of the plaintiff on the basis of unseaworthiness.

The appellee urges that the concluding paragraph of each instruction, taken with the district judge's entire charge, mitigated any suggestion that a defect in the whipline must render the entire vessel unseaworthy. We cannot agree. An instruction that the jury must find that a defect in a piece of gear renders the entire vessel unseaworthy is improper. *McAllister v. Magnolia Petro-*

---

1. Our holding in *Marshall* was predicated in part upon the extreme danger caused by the particular method of loading steel which caused the injury there. 378 F.2d at 198–99, 202. In *Gibbs v. Kiesel*, we held that a vessel owner may not rely upon a plaintiff's failure to

identify the precise manner in which gear is unseaworthy to defeat liability. 382 F.2d at 919. Neither holding stands for the proposition that unseaworthiness exists solely because a piece of gear fails in normal use, without regard to the reasonable fitness of the gear.

*leum Co.*, 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272 (1958).[2] The requested instructions created a substantial possibility that the jury would find the M/V MASTER NORWOOD reasonably suited for catching shrimp and end their inquiry, without considering whether the whipline itself was unseaworthy. These instructions were wholly inconsistent with another portion of the charge that unseaworthiness "doesn't mean that the entire vessel has to be unseaworthy." Two contradictory standards of liability are suggested, and we cannot say that the jury followed the proper rule. *Gardner v. Wilkinson*, 643 F.2d 1135, 1136-37 (5th Cir. Unit A 1981). Because of this uncertainty, the error was not harmless and a new trial is required on the unseaworthiness count.

Also at the appellee's request, the district judge charged the jury that

the law recognizes what is called a mere accident or unavoidable accident, which simply means an accident which occurs and is not caused or contributed to, by negligence or unseaworthiness.

Defendant's Instruction No. 6. The plaintiff objected only that there was no evidence of unavoidable accident without specifically excepting to the instruction on the ground that it was "at war with the absolute warranty of seaworthiness." *Lowry v.*

*A/S D/S Svendborg*, 396 F.2d 850 (3d Cir. 1968).

The objection of insufficient evidence does not raise the issue of whether an instruction is improper as a matter of law. *Worthington Corp. v. Consol. Alum. Corp.*, 544 F.2d 227 (5th Cir. 1976); *Page v. St. Louis Southwestern Ry.*, 312 F.2d 84 (5th Cir. 1963), *appeal after remand*, 349 F.2d 820 (5th Cir. 1965). We cannot consider an objection to a jury instruction not made at trial, absent plain error. *Rivers v. Angf. A/B Tirfing*, 450 F.2d at 14-15. An unavoidable accident charge in an unseaworthiness case is not plainly erroneous. *Quintero v. Sinclair Refining Co.*, 311 F.2d 217, 218 (5th Cir. 1962), *cert. denied*, 374 U.S. 830, 83 S.Ct. 1871, 10 L.Ed.2d 1053 (1963); *see Page v. St. Louis Southwestern Ry.*, 312 F.2d at 93-94.[3] There was evidence in this case to support the instruction. *Id.* at 94. The jury could reasonably have concluded that the storm, not unseaworthiness, caused the captain to lose control of the net.

Finally, after reviewing the evidence and the court's charge to the jury, we find no error in the instruction concerning recovery for injury to the ear.[4]

AFFIRMED IN PART, REVERSED IN PART AND REMANDED FOR A NEW TRIAL.

---

2. The appellee's instruction No. 5 was apparently taken almost verbatim from *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960). Appellate opinions often adopt the usage of a vessel's unseaworthiness to refer to the unseaworthiness of a piece of gear; indeed we have done so here. It does not follow, however, that a jury may be instructed in the language of an appellate opinion where such would be misleading. *Ballwanz v. Isthmian Lines, Inc.*, 319 F.2d 457, 462-63 (4th Cir. 1963), *cert. denied*, 376 U.S. 970, 84 S.Ct. 1136, 12 L.Ed.2d 84 (1964).

3. Notwithstanding our holding here, we note that in this and other circuits the unavoidable accident charge has been severely criticized because of its potential to mislead the jury in an unseaworthiness case. *E.g., Mills v. Mitsubishi Shipping Co.*, 358 F.2d 609 (5th Cir. 1966), *cert. denied*, 386 U.S. 1036, 87 S.Ct. 1474, 18 L.Ed.2d 600 (1967); *accord, Lowry v. A/S D/S Svendborg*, 396 F.2d 850 (3d Cir. 1968); *Yanow v. Weyerhauser S.S. Co.*, 250 F.2d 74 (9th Cir. 1958), *cert. denied*, 356 U.S. 937, 78 S.Ct. 779, 2

L.Ed.2d 812 (1958). *But cf. Neal v. Lykes Bros. S.S. Co.*, 306 F.2d 313, 316 (5th Cir. 1962) (charge harmless error where jury indicated seaworthiness by special interrogatory). In both *Lowry* and *Yanow*, an objection to the unavoidable accident charge was made on proper grounds. We express no opinion as to the result had such an objection been interposed here.

4. The charge complained of recites:

If you find that the cut on the ear is worth something, but didn't produce the abscess, he would be entitled to recover whatever the cut on the ear was worth; even if you decide the abscess was not brought about by it.

It was given at the request of the appellee. The plaintiff did not object to an earlier instruction that he could not recover for the cut on the ear. The charge correctly stated that the plaintiff could recover something if the jury found only the ear injury to have been caused by the fall of the net.